THE J. R. WATKINS MEDICAL COMPANY *v.* WILLIAMS.

Opinion delivered June 26, 1916.

1. VENDOR AND PURCHASER—NATURE OF THE RELATIONSHIP—IMPOSITION OF TERMS BY THE VENDOR.—One may sell goods to whom he pleases, and the relation of the parties as vendor and vendee is not changed by restrictions as to the class of persons to whom sales will be made, nor by the exaction that fixed prices shall be charged, or or that other exactions shall be complied with.

2. PRINCIPAL AND AGENT—NATURE OF THE RELATIONSHIP—SALES OF GOODS.—Appellee was engaged in selling the medical goods of appellant in this State; *held*, under the facts and the nature of the agreement between the parties that they occupied the relation of principal and agent, and not that of vendor and purchaser.

Appeal from Greene Circuit Court; *W. J. Driver,* Judge; affirmed.

*R. P. Taylor,* for appellant; *Tawney, Smith & Tawney,* of Winona, Minn., of counsel.

1. A similar contract was construed by this court in 115 Ark. 166. Williams was not appellant's agent, and the company was not engaged in business in Arkansas. The facts proven and the contract show a *sale* of the goods to appellee and not an agency. 181 S. W. 1183; 2 A. .& E. Ann. Cas. 309; 161 Fed. 223; 18 L. R. A. (N. S.) 139, 140; 40 S. W. 393; 98 Tenn. 244. Names go for title; the contract really operates to transfer title and was a sale. Mechem on Sales, § § 41-49; 28 Am. St. 811; 70 N. W. 808; 180 S. W. 21, and many others.

2. Granting the truth of jury's finding that Williams was an agent, it is not conclusive of plaintiff's right nor of the question of interstate commerce. 115 Ark. 166; 156 Fed. 2; 141 U. S. 47; 187 *Id.* 632; 217 *Id.* 91, and others; 57 Ark. 24; 8 Wall. (U. S.) 168; 216 U. S. 56; 227 *Id.* 389; 156 *Id.* 296.

3. Incompetent evidence was admitted and the court's instructions were improper. 156 Fed. 2; 108 N. E. 791. The interpretation of contracts is one of law and not of fact for a jury. Jones on Ev. (2 ed.), § 175; 89 Ark. 239; 84 U. S. 123; 67 Mo. App. 591.

*Burr, Stewart & Burr,* for appellee.

1. Every question raised here was ruled against appellant's contention in 115 Ark. 166. The contracts are identical. 157 Ky. 570. The facts and contract show an agency and not the relation of vendor and vendee. 141 U. S. 627; 150 *Id.* 312; 100 S. W. 558; 151 *Id.* 211; 98 Tenn. 221; 74 C. C. A. 611; 115 Ark. 166.

2. The business done was not interstate commerce. 115 Ark. 166.

3. There is no error in the instructions; they correctly state the law.

SMITH, J. The parties to this litigation concede that the case presents substantially the same questions as those involved in the case of *Clark* v. *J. R. Watkins Medical Co.,* 115 Ark. 166. The appellant here was the ap-

pellee there, and the cause of action in both cases was founded upon the same agency contract. Appellant advertises itself as the largest medicine house in the world and does its business chiefly through persons who represent it in the same capacity appellee did. The proof shows that at one time it had as many as eighty such representatives in this State and something like two thousand in the United States and Canada, and apparently all of them operate under a contract similar to the one existing between the parties here.

The court below, at its own instance, gave a number of instructions which submitted to the jury for their decision the controlling question of fact, that is, the nature of the relationship between the parties. Other instructions which appellant requested were refused, some of which might very well have been given. Others were properly refused. But without setting out these instructions, it may be said that the ones given substantially declared the law as appellant requested in so far as its instructions were correct declarations of the law. The court told the jury, in effect, to find for appellant for the amount sued for by it, provided they found it had the right to maintain the suit; and the jury was further told, in substance, that appellant had this right unless appellee, who was the defendant there, was its agent in selling and delivering its products in the years 1910, 1911 and 1912, and that the contract sued on was made in this State. And the correctness of this instruction presents the real question in the case.

It is contended here, as it was on the appeal of the former case, cited above, that the contract between the parties was in writing and that it was the duty of the court below to interpret it, and that in the performance of this duty the court should have declared that appellant was not engaged in business in this State, but that all transactions between the parties contemplated under the contract were interstate commerce and that appellant, therefore, had the right to sue in the courts of this State without complying with the laws of this State regulating

the manner in which foreign corporations may do business in this State. The trial court took this view of the case on the former appeal and directed a verdict in favor of the plaintiff there; but we reversed that judgment for the reasons there stated. And in doing so, we announced the principles which in our judgment are controlling. We said there that in construing a contract we might take into consideration the construction which the parties themselves had placed upon it and the action which they had taken in executing its provisions; but that these rules of construction were not available where the contract was unambiguous, in which event it was the duty of the court to construe the contract and to declare its purport. We said, however, that the contract was ambiguous and that when it was considered in connection with the correspondence between the parties and their respective conduct in the performance of its terms, the facts were such that it could not be said, as a matter of law, that the contract was one for the sale of goods, and not one for the creation of the relation of principal and agent.

Under the instructions of the court, which conform to the law as announced in the opinion on the appeal of the former case, the jury has found that appellee was appellant's agent in the business which he did in this State. And there can be no question as to the character of the business which appellee was doing. The undisputed proof is, and from the very nature of appellee's business must have been, that appellee was engaged in intrastate business. The wares which the contract contemplated he should sell to the consumer were shipped to him at Marmaduke, Arkansas, from Memphis, Tennessee. The original packages were broken up at Marmaduke and such portions of the various packages as appellee thought he might be able to sell on any particular trip were loaded into his wagon and conveyed from house to house until a purchaser was found, when a delivery would be made.

The former opinion set out the contracts and the correspondence between the parties, and we have substantially the same evidence, and we refer to the former opin-

ion for a statement of the provisions of the contracts. Counsel for appellee summarize these provisions and the evidence here in the trial below as follows:

"These contracts required C. E. Williams to devote all his time and attention to selling Watkins' products; to canvass every farmhouse in his territory at least three times a year; to sell these goods at retail prices fixed by the company; to confine his canvassing to his own territory; to observe such instructions in regard to the conduct of the business as the company might give, to have no other occupation whatever and to sell and handle no other goods whatsoever; to work continuously at the business so far as weather and health will permit; to furnish team, wagon and outfit for the business; to pay freight on goods, to make regular and satisfactory weekly reports to the company; to pay for goods in one or the other ways provided therein; to return all goods by prepaid freight to the company when he quits business for credit on his account; to sell said goods at every farmhouse in his territory; to make written reports to the company when required to do so of all sales, collections, goods on hand and outstanding accounts; to sell only to actual consumers; and to keep a complete record of all goods disposed of in said territory. He was to pay for the goods by giving the company half the cash the agency produced each week or by paying cash for goods in ten days with 3 per cent. discount; when he quit work the company agreed to receive all undisposed of goods on hand (to be returned freight prepaid) and give him credit on his account at the original price it charged him for them, and when a balance was struck the party who owed the other should pay such balance due on demand."

We think this evidence presents sufficient indicia of agency to support the finding that this was the relationship which in fact existed.

We recognize the fact that one may sell his goods to whom he pleases, and that the relation of the parties as vendor and vendee is not changed by restrictions as to the class of persons to whom sales will be made, nor by the

exaction that fixed prices shall be charged, or that other exactions shall be complied with, without changing the character of the transaction as a sale. The vendor may exact in advance an agreement covering these matters and may refuse to sell to any except those who will agree so to be bound without changing the character of the transaction as a sale, and compliance with these terms by the vendee will not support a finding that the vendor who imposed them is engaged in business in the State where the conditions are performed. But we think the jury here was warranted in finding something more. These findings might have been made: That the consignee was not definitely and absolutely bound, at all events, to pay for the goods. That the consignee could fulfill his contract by accounting to the consignor for all goods sold and by returning to the consignor the unsold goods. That the consignee had the right, under any circumstances, to return any of the consigned goods. That no part of the purchase price for the goods became due the consignor except upon a sale made by the consignee. That the goods were not to be paid for as upon a sale to the consignee, but only upon a sale by the consignee. That the consignee was to render regular accounts and reports of the business, showing the amounts and prices of goods sold, whether sold for cash or credit, the amount of goods on hand and outstanding accounts. That there was no stipulation either to sell or to pay for the goods in a fixed time. That all unsold goods were to be returned to the consignor when the contract was terminated by either party.

Appellant was constantly endeavoring to increase the number of its agents or representatives, and in the literature which was furnished the acting representatives, inducements were held out to secure others. In this literature it was said: "No experience is necessary, and no investment is required. We furnish you the goods and teach you the business. Address, Agency Department the J. R. Watkins Medical Company, Winona, Minnesota." In a great many places in the contracts, corre-

spondence and advertising matter, appellee and others similarly employed are referred to as agents, yet, of course, that designation is not controlling. This was made plain to the jury in an instruction in which they were told that if it was the intention of the medical company and appellee that the property in the goods delivered to appellee was to pass to him for the price to be paid by him, the transaction was a sale, and their verdict should be for the medical company, and this would be true without regard to the name used by either of the parties in describing the transaction.

We think the evidence summarized above is legally sufficient to support the finding that the business out of which this litigation arose was appellant's and that appellee was but its agent. And inasmuch as appellant concedes it has not complied with Act No. 313 of the Acts of 1907, page 744, authorizing it to do business in this State, the judgment of the court below will be affirmed.