THE W. T. RAWLEIGH MEDICAL COMPANY v. HOLCOMB.

Opinion delivered January 8, 1917.

VENDOR AND PURCHASER—RELATIONSHIP—WHEN NOT A JURY QUESTION.—
Appellee entered into a contract with appellant to sell medical
goods procured from the appellant. *Held,* the relationship between
the parties was that of vendor and purchaser, and not principal and
agent, and that it was error, under the facts, to submit to the jury
the issue of the nature of the relationship.

Appeal from Hot Spring Circuit Court;   *W. H.
Evans,* Judge; reversed.

*Henry Berger,* for appellant.

1.   This case presents substantially the same ques-
tions as those involved in 115 Ark. 166.   But the con-
tract is entirely different.   In the above case the con-
tract was ambiguous and parol evidence was admissible
with letters, circulars and the conduct, etc., of parties,
etc., to determine the relationship of parties.   Where
the contract is unambiguous, and is neither doubtful,
uncertain nor equivocal in meaning, etc., parol evi-
dence cannot be introduced to enlarge its terms.   *Ib.*
See also 2 Taylor on Ev., § 1035; 53 Wisc. 415; 17
C. B. (N. S.) 578.   Here the contract is perfect and
complete.

2.   It was error to allow appellee to testify on
his cross-complaint as to his damages.   Lost profits
must be ascertainable within reasonable certainty,
and not merely speculative, contingent and uncertain.
65 Nebr. 646; 91 N. W. 508; 74 N. Y. Supp. 764;
70 Kans. 409; 78 Pac. 861; 108 La. 171; 32 So. 456;
15 Okla. 493; 82 Pac. 502; 157 Ind. 271, 61 N. E.
561; 1 Gall. 315, Fed. Cas. No. 8, 403; 65 Am. Dec.
602; 3 Sutherland on Dam. (3 Ed.), 2136; Sedgw. on
Dam., § 183, 111 Ark. 484.

3.   The court erred in giving instruction No. 4
for plaintiff.   This was, in effect, a peremptory instruc-
tion that plaintiff could not recover on his cross-com-
plaint because he sustained no damages.   Yet appellee
was permitted to testify that he was the agent of

appellant company.    This was error.    181 S. W. 604.
There was also error in No. 5, given for appellee which
told the jury that the contract and sale of goods was
void and cannot be enforced.    183 S. W. 741.

4.    The contract and articles furnished constituted
a sale of merchandise by a citizen of Illinois to a citizen
of Arkansas, and was an interstate transaction which
cannot be regulated by statute.

J. C. Ross, for appellee.

1.    This case is controlled by 115 Ark. 166, and
124 Ark. 539.    The substantial provisions of each con-
tract are the same.    The conduct of parties under each
contract is exactly the same.    Appellant never com-
plied with the laws of Arkansas authorizing it to do
business in this State.

2.    Reviews the letters, circulars and evidence
and contends that there is no error for which the judg-
ment should be reversed.    Holcomb was a mere agent
and appellant was transacting business here contrary
to law.    Cases supra.

Smith, J.    It is insisted by learned counsel for
appellees that we have here a case which presents the
same question decided in the case of Clark v. J. R.
Watkins Medical Co., 115 Ark. 166, and also in the
case of J. R. Watkins Medical Co. v. Williams, 124
Ark. 539, and that this case is, therefore, controlled
by the opinions in those cases.    There are points of
similarity between the cases, yet we do not find here
the uncertainty in the relationship of the parties which
was developed by the proof in the former cases and
which we said warranted the submission to the jury of
the question of the determination of the relationship
between the parties and supported the jury's finding
that this relationship was that of principal and agent,
and not that of vendor and purchaser.    We set out in
full a copy of the contract between the parties to this
litigation.    It is as follows:

"(1)    This agreement made this 27th day of June,
A. D., 1914, at Freeport, Illinois, between the W. T.

Rawleigh Medical Company, party of the first part, hereinafter called the Company, and N. W. Holcomb, of Bismarck, Arkansas, party of the second part.

"(2)   Witnesseth, That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the Company, unless prevented by strikes, fires, accidents or other causes beyond its control, promises and agrees to sell and deliver to the party of the second part, f. o. b. cars at Freeport, Illinois, or, at its option, any other regular place of shipment, in such reasonable quantities as the party of the second part may from time to time order, all medicines, extracts and other products manufactured or sold by it, such goods to be sold and delivered to the party of the second part at the usual and customary wholesale list prices, such prices to be shown by invoice of each shipment.

"(3)   At its option, the Company will also sell party of the second part, partly on credit, a medicine wagon, such as said party of the second part may choose from current catalog, circulars, or other descriptions, and charge said wagon to his account at its customary credit price less any cash payment said second party may make.

"(4).   The Company further agrees to re-purchase from said party of the second part, at any time during the term of, or promptly after the termination or expiration of this contract, and at the wholesale prices then current, such medicines, extracts and other products of its manufacture as he may then have on hand in as good salable condition as when originally sold to him, on return of such products promptly by prepaid freight to Freeport, Illinois, or such other regular factory shipping point as may be designated by the Company in writing, and provided that said second party will pay the Company's actual expense of receiving, inspecting and overhauling all such goods.

"(5)   The party of the second part promises and agrees to pay the Company the wholesale prices f. o. b. cars at Freeport, Illinois, or other regular place of ship-

ment as aforesaid, for all medicines, extracts and other products furnished him from time to time, including any balance due on wagons, as hereinbefore provided by weekly payments, and that at the termination or expiration of this agreement for whatever cause, said second party further promises and agrees to pay in cash the balance due said Company on account for all medicines, extracts, other products, and wagon sold and delivered to him, as hereinbefore provided. But the time of making such payments, or any or all of them, may be extended by said Company without notice to the guarantors of this agreement, and without prejudice to the interests or rights of said Company.

"(6)   It is further understood and agreed that if said party of the second part pays his account in full on or before the fifteenth day of each month he will be allowed a cash discount of three per cent. (3%) from the usual and customary wholesale list prices.

"(7)   And it is further agreed between the parties hereto that this contract is subject to acceptance at the home office of said Company in Freeport, Illinois, and that unless previously terminated for any reason by either party upon written notice, shall expire by limitation December 31, 1914.

"(8)   At the expiration of this contract the Company hereby agrees to make a new contract, if signed by acceptable guarantors, with said party of the second part, without requiring his account to be paid in full at that time, provided the amount of his purchases and the condition of his account has been satisfactory to said Company.

"(9)   And it is further agreed by and between the parties hereto that this instrument constitutes and shall constitute the sole and entire agreement by and between the parties hereto, unless wholly cancelled, revoked or modified by the expressed written agreement of the parties hereto, to which has been affixed the corporate seal of the party of the first part.

"(10)   In Testimony Whereof, the party of the first part has caused this agreement to be executed in

its corporate name by its President and its corporate
seal to be hereunto affixed; and the said party of the
second part has hereunto set his hand and seal, the day
and year first above written.

        "The W. T. Rawleigh Medical Company,

            "By W. T. Rawleigh, President,

" (Seal)         "N. W. Holcomb,

  "Accepted

   "July 2, 1914                " (Seal)

"At Freeport, Illinois.   "Second Party sign in Ink."

A comparison of the provisions of this contract
will disclose several material variations between it and
the one set out in the opinion in the case of *Clark* v.
*Medical Co., supra.*

We said in that case, as it had been said in many
others, that it was the duty of the court to construe a
contract and declare its meaning where its terms were
unambiguous. We said, however, in that case, and in
the case of *Medical Co.* v. *Williams, supra,* that the
contract there under consideration was ambiguous,
and that the conduct of the parties in the performance
of its terms added to the ambiguity, and that there
was presented in each of those cases the question for
the jury to determine whether the parties occupied
the relation of principal and agent, or that of vendor
and vendee.

We have here the evidence of the acts of the
parties to the contract done in the performance of its
provisions; but we think there is nothing in this
evidence which shows any amendment of the contract
or changes the relationship of the parties from that of
vendor and vendee, as set out in the contract, to that
of principal and agent. We review this evidence in
its light most favorable to appellees.

Appellant manufactures a great variety of medi-
cines, extracts, and other articles which are sold exten-
sively over the greater portion of the United States by
persons who occupy the same relation to it as that of
appellee, N. W. Holcomb, who was sued, in conjunc-

tion with his guarantors, for the balance due by him to the appellant company. During the course of the business out of which this litigation arose, there was considerable correspondence between the parties, which was offered in evidence, and there were various circulars relating to the conduct of the business which appellant sent to all persons engaged in the sale of its products. Among these circulars was one relating to the assignment of territory in which prospective salesmen were advised about the choice of territory, and the representation was made that exclusive territory would be given to each representative. When the contract was closed with Holcomb, it was discovered that a portion of the territory assigned him had been previously assigned another representative named Ott, and this fact formed the basis of a counterclaim for damages by Holcomb. It appears, however, that this counterclaim for damages was not pressed by appellee in the court below, as he rested upon the primary proposition that the appellant company had no right to maintain this suit in any event. This contention was based upon the proposition that the appellant company was a foreign corporation and had not complied with the laws of this State permitting it to do business herein; and that the relation between it and appellee was that of principal and agent, and not that of vendor and vendee, and that the appellant company, therefore, had no right to maintain this suit. Appellee briefs the case upon this issue solely, and it is necessary to determine only that question to dispose of this appeal.

The assignment of territory to appellee mentioned above contained the following direction: "Keep this form and attach to copy of contract," and there was furnished at the time a booklet of instructions entitled, "Rawleigh's Territory List." This book of instructions, and the letters and circulars sent out by appellant company, contained a great many suggestions to its representatives as to the conduct of the business, and directions in regard to the remittance of money, the direction in regard to the remittances being that

the agent should remit each week one-half of the receipts from the business until the account was balanced, and the letters from appellant in regard to these remittances evidenced great dissatisfaction with the manner in which Holcomb was conducting the business. Appellee and other salesmen were sent monthly statements which were prepared on blanks furnished for this purpose. Appellee attaches much importance to the following statement printed on the various monthly statements sent him. We quote as follows:

"At the low prices and liberal terms under which we furnished Rawleigh Products, we expect you

"1st. To sell all you can for cash.

"2nd. To collect promptly for all products used.

"3rd. To report the full sum of your Total Cash Receipts, Traded, etc., every week.

"4th. To collect up all of your old bills closely.

"5th. To remit liberally and regularly.

"6th. To gradually reduce your account after you begin on your collections.

"7th. To pay off your account with the company in full within a reasonable time.

"THE ABOVE IS WHAT WE EXPECT OF YOU.

"Do these figures indicate that you are reducing and paying off your account with us as fast as you should? If not, please send us some EXTRA PAYMENTS with each of your Reports from now until you have reduced your account to what it should be at this time, or pay it up in full. Remember, your account must be paid some time, and the more and faster you send in the money the quicker you can get on a cash basis."

The evidence is to the effect that the appellant company assigned exclusive territory to appellee and to other representatives, and that no one representative was permitted to invade the territory of another. Appellee desired to employ his son to assist him in his work and wrote the company for permission to employ

him, and in reply to this request received a letter containing the following statements:

"In regard to running two wagons, it is against our policy for any man to have sub-agents, so if you have an applicant, send us his application at once, have him furnish contract and help us get him started in a part of your territory if it is sufficiently large to enable two men to keep busy. You will find that you will have all that you can do to keep your stock of products checked up, to collect up and take care of your own business without becoming responsible for another man's work. Then, too, experience has taught us that having sub-agents has not proven satisfactory, therefore do not do so, but instead send us application of the man you have interested and help us get him started to work."

We think the evidence we have set out is a fair summary of the testimony which appellee says warranted the court in submitting the question of the nature of the relationship of the parties to the jury and supports the jury's finding that the relation was that of principal and agent. We do not agree with him, however, in this contention. We recognize the former cases cited above as presenting an exceedingly close question as to whether or not the court should not have declared, as a matter of law, that the relationship in those cases was that of vendor and vendee, and not that of principal and agent, and whether there was error in submitting this question to the jury at all. There is no such ambiguity in this contract as there was in the one involved in those cases, and the opinion in those cases set out many indicia of agency which were disclosed by the evidence, which are not found here. We said in the opinions in the above cited cases that the mere designation of one as an agent did not make him such, and that one might sell his goods to whom he pleased and might prescribe other exactions in regard to the price to be charged and the manner of reselling without changing the character of the transaction as a sale. We are constrained to believe that

the parties to this litigation have entered into a contract of bargain and sale, and not one of principal and agent, and that there is nothing in their subsequent conduct which changed the nature of this relation. It follows, therefore, that the court should have declared, as a matter of law, that the appellant company had the right to maintain this suit and to recover such sum, if any, as the proof showed was due it after all just credits had been allowed appellee. The judgment of the court below must, therefore, be reversed and the cause will be remanded for a new trial.