THE W. T. RAWLEIGH MEDICAL COMPANY v. ELLIS.

Opinion delivered February 11, 1918.

1. CONTRACTS—CONSTRUCTION—AMBIGUITY—ORAL EVIDENCE.—Oral evidence can not impart into a contract an ambiguity where none otherwise exists.

2. CONTRACTS—CONSTRUCTION—SALE OF GOODS.—A contract was entered into between appellant and appellee, whereby the former agreed to deliver to the latter, for resale, certain medical supplies; *held,* the court should have construed the contract under its unambiguous terms, as one for the purchase of goods, wares and merchandise, with a guaranty of payment therefor.

Appeal from Ouachita Circuit Court; *C. W. Smith,* Judge; reversed.

*J. W. Warren,* for appellant.

1. The note sued on was given in settlement of an account for which appellee was liable. No payment nor fraud was shown. 129 Ark. 384.

2. The contract was for a *sale* of goods and is unambiguous. The sale was made in Illinois on orders. 126 Ark. 597; 129 Ark. 384.

3. The court erred in its instructions. Parol evidence was not admissible to vary the terms of a written instrument. 181 S. W. 273; 188 *Id.* 566; 190 *Id.* 564; 182 *Id.* 106; 183 *Id.* 541.

4. Settlement of the account was a sufficient consideration for the execution of the note. 44 Ark. 556; 128 Ark. 10.

*Thos. W. Hardy,* for appellees.

1. Appellant is a foreign corporation and had not complied with the laws of Arkansas and was doing business in this State. 193 S. W. 497; 115 Ark. 176; 163 S. W. 757; 128 Ark. 211.

2. The contract is ambiguous and uncertain as to whether Ellis was an agent or purchaser. The issues were properly submitted to the jury. 115 Ark. 176; 124 *Id.* 543.

3. The case was submitted to the jury under proper instructions and their verdict is conclusive.

SMITH, J. The parties to this litigation entered into the following contract:

"Whereas, E. P. Ellis, of Camden, Ark., desires to purchase of W. T. Rawleigh Medical Company, of Freeport, Ill., on credit and at wholesale prices to sell again to consumers, medicines, extracts, spices, toilet articles, perfumes, polishes, stock dip and disinfectant, stock preparations and poultry supplies and other goods manufactured and put up by it, paying his account for such goods in installments as hereinafter provided; therefore, he hereby agrees to sell no other goods than those sold him by said company, to sell all such goods at regular retail prices to be indicated by it, and to have no other business or employment. He further agrees to pay the company for all goods purchased under this contract the current wholesale prices of such goods by remitting in cash each week to said company an amount equal to at least one-half the receipts from his business until his account is balanced, and for that purpose as evidence of good faith he shall submit to said company weekly reports of his business; provided, however, if he pays his account in full on or before the 10th of each month, he is to be allowed a discount of 3% from current wholesale prices. When the sale or purchase of goods under this contract shall be permanently discontinued for any reason or upon any notice given by either party, he further agrees to settle in cash, within a reasonable time, the balance due said company on account.

"Unless prevented by strikes, fires, accidents, or causes beyond its control, said company agrees to fill and deliver on board cars at place of shipment, his reasonable orders, provided his account is in satisfactory

condition, and to charge all goods shipped him under this contract to his account at current wholesale prices; also, to notify him promptly of any change in wholesale or retail prices.

"Said company agrees to furnish him free of charge on board cars at place of shipment, a reasonable amount of first-class advertising matter, report and order blanks, and printed return envelopes for his own use in conducting his business; also, to give him free of charge, after he has begun work, suggestions and advice through letters, bulletins and booklets as to the best method of selling its products to consumers.

"This contract is subject to acceptance at the home office of the company, and it is to continue in force only so long as his account and the amount of his purchases are satisfactory to said company. Provided, however, that said E. P. Ellis or his guarantors may be released from this contract at any time by paying in cash the balance due said company on account.

"Accepted March the 11th, 1911.
"The W. T. Rawleigh Medical Company,
By W. T. Rawleigh, President.
"E. P. Ellis.

"In consideration of the W. T. Rawleigh Medical Company extending credit to the above named person, we hereby guarantee to it, jointly and severally, the honest and faithful performance of the said contract by him, waiving acceptance and all notice, and agree that any extension of time shall not release us from liability under this guarantee.

"E. P. Purifoy,
"P. B. Greening,
"W. T. Ellis,
"Metza D. Hale."

Pursuant to the terms of this contract, merchandise of the kind there named was furnished to E. P. Ellis, and, after all proper credits had been given and allowed, there finally remained due the sum of $269.96, for which sum a note was executed to the order of the medical

company, and this suit was brought to enforce the payment of that note; but the right to maintain it is denied upon the ground that the medical company, the plaintiff below and appellant here, is a foreign corporation and has not complied with the laws of this State authorizing it to do business in this State. The medical company admits that it is a foreign corporation, and that it has not complied with the laws of this State authorizing it to do business here; but it denies that it has been doing business in this State.

It is asserted on the one hand, that the contract between the parties, out of which this indebtedness grew, was one of principal and agent; while, on the other, it is asserted that the contract between them was one for the sale of merchandise.

(1)    We have had several of these cases recently presenting this identical question. The first of these cases was that of *Clark* v. *Watkins Medical Co.*, 115 Ark. 166; and another case in which that medical company was a party was that of *Watkins Medical Co.* v. *Williams*, 124 Ark. 539. In those cases we set out the contracts under which the parties had operated, and we said there that there was such ambiguity in the contracts as to make it a question of fact for the jury whether or not the relationship between the parties was that of principal and agent, or that of buyer and seller. We announced there the duty of the court to construe the terms of an unambiguous contract; and this doctrine was reiterated in the later case of *Rawleigh Medical Co.* v. *Holcomb*, 126 Ark. 597. In this last cited case we set out the contract between the parties to that litigation and held that there was no such ambiguity in its terms as warranted a submission to the jury of the question of its meaning. We said there that was an unambiguous contract and that the court should not only have construed it, but should have construed it as constituting the relation of buyer and seller, and not that of principal and agent. While this is apparently the same medical company which was a party to the litigation in the last-cited case, it appears that the

contracts set out in the two cases are not identical. We think, however, that the contract in the instant case is no more ambiguous than was the contract in the former case to which this medical company was a party. The trial court took the opposite view and permitted the introduction of testimony which was intended to explain the nature of this contract and which is said to show that the contract was, in fact, one of principal and agent. The evidence in this respect is substantially the same as the testimony in the Holcomb case, *supra;* but such testimony can not import into a contract an ambiguity where none otherwise exists.

(2)   It is very earnestly insisted by counsel for appellee that this case is concluded by the opinion of this court in the cases referred to above in 115 and 124 Arkansas. But a comparison of the contracts set out in those cases will disclose a number of points of difference. There are provisions contained in the contracts set out in the earlier cases which do not appear in the contract now under consideration; and it is these provisions which we said created the ambiguity which rendered admissible the parol testimony which was offered to explain this ambiguity. For instance, in the Williams case, *supra,* we said that the jury might have found ''That the consignee was not definitely and absolutely bound, at all events, to pay for the goods. That the consignee could fulfill his contract by accounting to the consignor for all goods sold and by returning to the consignor the unsold goods. That the consignee had the right, under any circumstances, to return any of the consigned goods. That no part of the purchase price for the goods became due the consignor except upon a sale made by the consignee. That the goods were not to be paid for as upon a sale to the consignee, but only upon a sale by the consignee. That the consignee was to render regular accounts and reports of the business, showing the amounts and prices of goods sold, whether sold for cash or credit, the amount of goods on hand and outstanding accounts. That there was no stipulation either to sell or to pay for

the goods in a fixed time.   That all unsold goods were to be returned to the consignor when the contract was terminated by either party.''

In those cases the purchaser was referred to as an agent, and, while we said that his designation as an agent was not controlling and did not, of itself, render him such, still it was one of the circumstances to be considered in determining what that relation was.   We also there pointed out that the contract gave to the medical company the right to terminate the services of the person designated as agent upon written notice to that effect in case of the agent's violation of this contract or in the event of his failure to satisfactorily discharge  these duties under his agreement.   The contract now under consideration does not contain the provisions, which we said made those contracts ambiguous; and the  court should, therefore, have construed the contract according to its unambiguous terms as one for the purchase of goods, wares and merchandise, with a guaranty of payment therefor.

The judgment of the court below will, therefore, be reversed, and as the sum due is not in dispute, judgment will be rendered here for the amount of the note.