THE W. T. RAWLEIGH MEDICAL CO. v. ROSE.

Opinion delivered April 15, 1918.

1.   CONTRACTS—FOR SALE OF MEDICAL SUPPLIES—RELATIONSHIP OF THE PARTIES,—A contract between appellant and appellee for the delivery by the former to the latter of certain medical supplies, to be resold by the latter, held to constitute a contract of sale and not a relationship of principal and agent.

2.   SAME—SAME—FRAUD.—Held that the appellee was not induced to enter the above contract by reason of any misrepresentations.

3. Foreign corporations—inter-state business—compliance with state laws.—Act 313, p. 744, Acts of 1907, does not apply to foreign corporations engaged in interstate commerce. It is not within the police power of the State to place burdens upon individuals or corporations engaged in interstate commerce unless the burden is sanctioned by congress.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

*E. H. Vance, Jr., Henry Berger* and *Albert W. Jernigan,* for appellant.

1. This case is parallel with 126 Ark. 597, and involved an identical contract. See also 197 S. W. 1168. The relation of vendor and purchaser was created as held by these cases.

2. It was error to permit defendant to read the extracts from the books and pamphlets for the purpose of modifying, varying and contradicting the written contract. 64 Ark. 653; 55 *Id.* 352; 40 *Id.* 117; 108 *Id.* 507; 13 *Id.* 593-8; 83 *Id.* 63; 115 *Id.* 177; 124 *Id.* 542.

3. Review the instructions given and refused and contend there was error, citing 115 Ark. 183; 126 *Id.* 597, 604; 88 *Id.* 364; 86 *Id.* 164; 23 *Id.* 128; 60 *Id.* 206; 2 Bush, 226.

*Hogue & Heard,* for appellee.

1. Appellee was fraudulently induced to enter into the written contract. The contract was abandoned and a new relation, that of principal and agent, was assumed.

2. The contract was made in this State. Appellant was a foreign corporation and failed to comply with the laws of this State. 9 Cyc. 670.

HUMPHREYS, J. Appellant instituted suit against appellee in the Hot Spring Circuit Court on January 14, 1915, to recover a balance of $929.70, with 6 per. cent. interest from March 10, 1914, alleged to be due for goods, wares and merchandise sold under contract entered into between appellant and appellee of date July 11, 1910, which contract was as follows:

"Whereas, J. H. Rose of Thornburn, Arkansas, desires to purchase of The W. T. Raleigh Medical Company of Freeport, Illinois, on credit, and at wholesale prices to sell again to consumers, medicines, extracts, spices, soaps, toilet articles, perfumes, stock and poultry preparations and other goods manufactured and put up by it, paying his account for such goods, in installments as hereinafter provided. Therefore, he hereby agrees to sell no other goods than those sold to him by said company, to sell all such goods at regular retail prices to be indicated by it, and to have no other business or employment. He further agrees to pay said company for all goods purchased under this contract, the current wholesale prices of such goods by remitting in cash each week to said company an amount equal to at least one-half of the receipts from his business until his account is balanced, and for that purpose as evidence of good faith, he shall submit to said company weekly reports of his business; provided, however, if he pays his account in full on or before the 10th day of each month he is to be allowed a discount of three (3) per cent. from current wholesale prices. Upon the termination of this contract, for any cause, or by either party, he further agrees to settle in cash, within a reasonable time, the balance due said company on account.

"Unless prevented by strikes, fires, accidents or causes beyond its control, said company agrees to fill and deliver on board cars at place of shipment his reasonable orders, provided his account is in satisfactory condition, and to charge all goods shipped to him under this contract to his account, at current wholesale prices; also to notify him promptly of any change in wholesale or retail prices.

"Said company further agrees to furnish him free of charge, on board cars at place of shipment, a reasonable amount of first-class advertising matter, report and order blanks, and printed envelopes for his use in conducting his business; also give him free of charge, after he had begun work, suggestions and advice, through let-

ters, bulletins and booklets, as to the best method of selling its products to consumers.

"This contract is subject to acceptance at the home office of the company and is to continue in force only so long as his account and the amount of his purchases are satisfactory to said company; provided, however, that said J. H. Rose, or his guarantors may be released from this contract at any time by paying in cash the balance due said company on account.

"Dated at Freeport, Illinois, July 11, 1910.

"The W. T. Rawleigh Medical Company.
" (Seal)                    By W. T. Rawleigh, President.
" (Signed)                          John Henry Rose."

Appellee denied liability under the contract for the reasons:

First, that the written contract established the relationship of principal and agent between appellant and appellee and was not a contract for the purchase and sale of merchandise by appellant to appellee.

Second, that if the written contract was one of purchase and sale it had been abandoned by the parties and that the sale of the goods and merchandise was made to the purchasers by appellee as agent for appellant.

Third, that appellee was fraudulently induced by the appellant to enter into the written contract under the belief that it was a contract of agency and that appellant, on account of said fraud, is estopped from claiming that the goods, wares and merchandise were sold outright to appellee.

Fourth, that appellant was a foreign corporation and had not complied with the conditions necessary to do business in the State; and, for that reason, could not make a contract in the State for the sale of its goods enforceable in the courts of the State.

The cause was tried before a jury upon the issues joined, instructions of the court and evidence adduced, and a verdict was returned in favor of appellee and a

judgment rendered in accordance therewith dismissing the complaint of appellant.

The appellant, to sustain the issues on its part, introduced the deposition of J. R. Jackson, who was the secretary of appellant company, and he produced the original written contract, and the following acknowledgment of the indebtedness by appellee:

"Gentlemen: I received your statement dated January 2, 1914, showing a balance of $961.25 due your company on my account, at the close of business on Wednesday, December 31, 1913. I hereby approve the same as being correct upon the date stated and understand that this balance is assumed by my 1914 contract.

"Yours very truly,

"J. H. Rose,

"Malvern, Hot Spring, Arkansas."

Mr. Jackson testified, in substance, that appellant company is a foreign corporation chartered and doing business under the laws of Illinois; that its factories and warehouses were situated in Illinois, Tennessee, Pennsylvania, California and Minnesota; that none of them were situated in Arkansas; that it sold the goods to appellee outright under the written contract signed by appellee and his sureties in the State of Arkansas and returned to the company at Freeport, Illinois, for approval; that after investigating the sureties said company approved the contract and billed the goods out to him f. o. b. from the factory located at Memphis, Tennessee; that appellant was engaged in interstate commerce and for that reason did not comply with the laws of the State of Arkansas exacted of foreign corporations; that the contract was never changed or modified and that all the business transacted with appellee was transacted under the contract; that under the contract he made about eighty-five orders; that during the time the shipments were made it mailed appellee bulletins and booklets containing suggestions and advice as to the best methods of selling its products to consumers but that the consignee of the goods was not

forced to comply with the suggestions; that the company did not advertise in the State of Arkansas but sent appellee advertising matter, as per the terms of the contract, for him to circulate in the interest of his business.

Appellee, to support the issues in his behalf, testified in substance that the contract was mailed to him from Freeport, Illinois, and that he and his sureties signed it in Garland County, Arkansas, and that he mailed it back to the company; that he could read and write and read the contract before he signed it; that the company assigned him Hot Spring County as territory in which to sell the goods; that he made orders for what he wanted and when the goods came he paid the freight and received them; that he had a wagon and team and peddled the goods throughout the territory, some for cash, some on credit; that he made weekly reports to the company showing the number of days he worked; that he assessed the goods purchased from appellant in his own name in Hot Spring County as his property; that the contract was made in July, 1910, and terminated in November, 1913; that he signed the statement acknowledging that he owed a balance to appellant of $925; that after he entered into the contract, he asked appellant for the literature which was to be furnished under the terms of the contract; that they sent him pamphlets "Does it Pay to Take Chances?" "Guide Book for Rawleigh Men," "Facts and Evidence;" that they sent the pamphlets and booklets to him to aid him in selling the goods that he ordered and the company shipped. In the course of his testimony appellee read, over the objection of appellant, certain paragraphs from these pamphlets and books which are too numerous to set out in this opinion. Appellee also introduced the evidence of T. W. Duncan, who testified as follows: "I have had relations with The W. T. Rawleigh Company. Began in 1911. I contracted to sell their products. They undertook to give me instructions and advice as to the best method of selling their goods. They sent me books marked 'Rawleigh Territory Lists,' 'Does

it Pay to Take Chances?' another book called 'Facts and Evidence,' another book called 'Guide Book.' I followed the advice given.'' The portions of the pamphlets and booklets read by appellee were introduced and read over the objection of appellant.

Appellee concedes that the written contract is identical with the contract passed on by this court in the recent case of *W. T. Rawleigh Medical Company* v. *Ellis,* 132 Ark. 421, and, for that reason, does not longer urge that the written contract constitutes one of principal and agency. In that case this court held that a contract identical with this was not ambiguous and that it constituted a contract of sale and purchase. In support of its decision, the court cited the case of *Rawleigh Medical Company* v. *Holcomb,* 126 Ark. 597, in which the court held that it was the duty of a trial court to construe an unambiguous contract, and that it was improper to submit to the jury the question of whether a written contract constituted a contract of principal and agent or a contract of purchase and sale, when the contract contained no ambiguity as to which it was. In the case of *W. T. Rawleigh Medical Company* v. *Holcomb, supra,* it was contended that the correspondence between the parties, the various circulars relating to the conduct of the business and the subsequent conduct of the parties, including the directions of the W. T. Rawleigh Medical Company to Holcomb to sell all he could for cash, to collect promptly for all products used, to report the full sum of total cash receipts, traded, etc., every week, collect up all the old bills closely, to remit liberally and regularly, to gradually reduce his account after he began on the collections, to pay off the account in full within a reasonable time, and things of that nature, had the effect of changing the relationship of the parties in the contract to that of principal and agent; but this court said: ''We are constrained to believe that the parties to this litigation have entered into a contract of bargain and sale, and not one of principal

and agent, and that there is nothing in their subsequent conduct which changed the nature of this relation.''

(1)     The identical question is raised by appellee in the instant case by insisting that the written contract was abandoned and that the relationship of principal and agent was established between the parties because they acted outside and independent of the written contract. We have examined the excerpts from the various booklets and the subsequent conduct of the parties in the instant case, as revealed by the evidence, and find that they are in substance the same things contended for in *W. T. Rawleigh Medical Company* v. *Holcomb, supra*, as converting the contract from one of sale and purchase to one of agency. In addition, the undisputed and positive evidence in the instant case shows that the written contract was never abandoned. Appellee admits that he ordered the goods and paid for them under the terms of the written contract, and that it was in force until November, 1913, at which time they ceased to do business, and that as far as he was concerned he wanted the contract to continue and the balance to be carried in the 1914 account; and the secretary of appellant testified that every order was made under the written contract and they operated under it as long as any goods were shipped to appellee. The facts in the instant case are so nearly similar to the facts in the cases of *W. T. Rawleigh Medical Co.* v. *Holcomb* and *W. T. Rawleigh Medical Co.* v. *Ellis, supra*, that they are not distinguishable from the case at bar, so we hold that the instant case is ruled by them.

(2)     It is insisted by appellee, however, that he was fraudulently induced by appellant to enter into a written contract under the belief that it was a contract of agency. Appellee could read and write and had ample opportunity to examine the contract and did examine it before he signed it. He operated under the contract as one of purchase and sale and admitted his liability thereunder to be the amount claimed by appellant in this case at a time when he thought they would continue the contract and ex-

tend further credit. The contract was unambiguous in its terms and was one for the sale and purchase of goods, and not one of agency. We have examined the evidence carefully, and can find no suggestion that the contract was induced by misrepresentations made by appellant to appellee.

(3) Lastly, it is insisted by appellee that the contract was made in Arkansas by a nonresident corporation without first complying with act May 13, 1907,* and that such contracts will not be enforced in this State either in law or in equity. We do not understand that the act in question applies to foreign corporations engaged in interstate commerce. It is not within the police power of the State to place burdens upon individuals or corporations engaged in interstate commerce unless the burden is sanctioned by Congress. *Crenshaw* v. *Arkansas,* 227 U. S. 389.

The court below erred in not giving the peremptory instruction requested by appellant. For the error indicated, the judgment dismissing the complaint will be reversed and judgment entered here in favor of appellant against appellee for $929.70, with 6 per cent. per annum from March 10, 1914, until paid.

---

*Act 313, page 744, Session Laws of 1907.  (Reporter.)