FURST & THOMAS *v.* HARTZELL.

Opinion delivered February 21, 1927.

1. SALES—CONSTRUCTION OF CONTRACT.—It is the province of the court to determine whether a contract is one of purchase and sale or one of agency if the contract is unambiguous.

2. SALES—CONSTRUCTION OF CONTRACT.—Where a contract for the disposal of plaintiff's goods to consumers named defendant as "salesman" and provided for free advice and suggestions to him as to the best method of selling the goods, for payment by him according to cash sales, and for return of unsold goods on termination of the contract, *held* that, whether it constituted a contract of agency or of purchase and sale is for the jury.

Appeal from Arkansas Circuit Court, Northern District; *George W. Clark,* Judge; affirmed.

*A. G. Meehan,* for appellant.

*W. A. Leach,* for appellee.

MEHAFFY, J.   The appellant, plaintiffs below, filed in the Arkansas Circuit Court the following complaint: That on or about the 8th day of July, 1921, the plaintiffs and the defendant, William E. Chadick, entered

into a contract by the terms of which the plaintiffs agreed to sell and deliver, subject to the conditions contained in said contract, to the defendant, William E. Chadick, plaintiffs' product in reasonable quantities as ordered by the defendant. The relationship of vendor and vendee, according to the terms of this contract, were to continue for so long as the contract remained in force.

By the terms of said contract the said William E. Chadick agreed to pay Furst & Thomas for all goods sold to him by them the usual wholesale price thereof, and further agreed to pay all unpaid balances due from him to them at the time of the execution of said contract, the terms and conditions of said payments being more definitely set out in the duplicate copy of said contract, which is hereto attached and made a part hereof. The said contract above referred to was subject to acceptance by the plaintiffs, Furst & Thomas, and the same was duly accepted by them on the 2d day of August, 1921.

Shortly after the execution of the said contract the plaintiffs began shipping to the defendant, William E. Chadick, under instructions and orders from the said William E. Chadick, and in accordance with the contract above referred to, merchandise and products of the kind contemplated at the time of the execution of said contract. That the said William E. Chadick continued to purchase merchandise and products from the plaintiffs from that time until the 24th day of December, 1923. On or about the time the purchases aforesaid began to be made by the defendant, William E. Chadick, he, the said defendant, began to make remittances to the said Furst & Thomas, and continued to do so up until the 3rd day of January, 1924, but that no further payments have been made upon said account since that date. The unpaid balance of indebtedness for goods, wares, merchandise, as above set out, due from the defendant, William E. Chadick, to the plaintiff is the sum of $1,376.76.

As a part of the said contract the defendants, A. A. Hartzell, Charles F. Kuehen and J. A. Owen, executed

a joint and several guaranty in favor of Furst & Thomas for the purpose of guaranteeing the faithful performance of the contract above referred.to by the codefendant, William E. Chadick, and to guarantee payment by him of the purchase price of all goods furnished to him on credit, as provided in said contract. The said guaranty also extended to any balance on his account for goods previously purchased by him and remaining unpaid at the date of the acceptance of the contract herein referred to.

As a further condition of said guaranty, the three defendants, A. A. Hartzell, Charles F. Kuehen and J. A. Owen, agreed that, three months from and after the termination of the agreement above referred to and the nonpayment of his account by William E. Chadick, the guaranty of said account by said three defendants shall become absolute as to the amount due from him, and the said three defendants agreed to pay any indebtedness of the said William E. Chadick due the plaintiffs, Furst & Thomas, without any proceedings having to be taken against the said William E. Chadick. That a period of time in excess of three months has expired since the termination of said contract. A copy of the contract aforesaid and the bond aforesaid is hereto attached, marked Exhibit A and made a part hereof.

A certified statement of account is hereto attached and marked Exhibit B. That an itemized statement of account is hereto attached and marked Exhibit C.

Attached to complaint as Exhibit A was the following contract:

"This contract, made and entered into at Freeport, Illinois, this 6th day of July, 1921, by and between Frank E. Furst and Fred G. Thomas, copartners, doing business under the name of Furst & Thomas, of Freeport, Illinois, and Wm. E. Chadick of Stuttgart, Arkansas, hereinafter called the salesman, witnesseth:

"That, upon acceptance of this contract, Furst & Thomas agree to thereafter, unless prevented by strikes, fires, accidents, or other causes beyond their control, sell

and deliver to the said salesman, on board cars at Freeport, Illinois, or, at their option, at their nearest branch warehouse, at their current wholesale prices, their products in reasonable quantities as ordered by him, so long as this contract is in force and his account is in satisfactory condition. Furst & Thomas also agree to give the salesman free advice and suggestions through bulletins, booklets and letters as to the best methods of selling to consumers the goods purchased by him under this contract, but it is expressly agreed that nothing contained in such advice and suggestions shall be binding upon the salesman nor shall be construed as in any way altering or modifying the terms of this contract.

"The salesman agrees to pay Furst & Thomas the regular wholesale price for all goods sold to him by them, including any balance on his account for goods previously purchased by him and remaining unpaid at date of acceptance of this contract, in the following manner, to-wit: On the installment plan, by paying to said Furst & Thomas in cash, each week, a sum equal to not less than one-half his total cash sales and collections from such goods during said week; provided, that the salesman may be required, at the option of Furst & Thomas, to pay not less than the wholesale price of certain products designated by them and sold by him for cash or collected for during said week; provided that, by paying his account in full on or before the tenth day of each month, said salesman shall receive a discount of 3 per cent., if he remits cash in full with each order, he shall receive a discount of 5 per cent. from their current wholesale prices.

"As a matter of good faith and to show what the receipts of his business are from week to week, he agrees to send to Furst & Thomas each week a correct and fully itemized record of his business on forms provided for that purpose by them. Either party shall have the right to terminate this contract by giving written notice to the other party; provided that, if the sale or purchase of goods under this contract be permanently discontinued for any reason, it is thereby terminated, and, upon

its termination from any cause by either party, the sales-man agrees to settle within three months the balance due said Furst & Thomas on account; provided that the salesman shall have the privilege of returning promptly, after termination of contract, to Furst & Thomas, at Freeport, Illinois, by prepaid freight, his stock of unsold goods, and for all goods so returned by the salesman in original, unopened bottles and packages, Furst & Thomas agree to allow credit at the price originally charged after deducting the cost of checking, handling and putting such goods back into stock, and if, on final accounting, any balance is due the salesman, to pay the same promptly.

"This contract is subject to acceptance by Furst & Thomas at their home office in Freeport, Illinois, and, when so accepted, shall immediately be in force and effect.

"Accepted at Freeport, Illinois. 8-2-1921. Furst & Thomas.

"Salesman sign here in ink.  William Chadick."

The defendant, Wm. E. Chadick, filed separate answer, which was as follows:

"Defendant admits that he signed the contract mentioned and described in plaintiff's complaint and admits that the copy of said contract annexed to plaintiff's complaint as Exhibit A thereto is a correct copy thereof. Defendant denies that any relation existing between this defendant and the plaintiffs, by reason of said contract, was that of vendor and vendee. Defendant denies that he was to pay for all goods delivered to him by the plaintiffs, but states that he was to pay for only such goods as were delivered to him and by him sold and delivered to the purchasers. Defendant denies that any of the goods delivered to him were purchased by him, but states that all goods so delivered to him were consigned to him to be sold, and that all goods so delivered to him, remaining unsold at the termination of the contract, were to be by him returned to the plaintiffs. That all goods delivered to defendant by the plaintiffs

were manufactured by and were the property of Furst-McNess Company; that Furst & Thomas, in delivering said goods to the defendant, were acting merely as agents for and on behalf of said Furst-McNess Company, and that all deliveries so made by Furst & Thomas to this defendant were in truth and in fact made by said Furst-McNess Company. That Furst-McNess Company is a corporation, organized and existing under and by virtue of the laws of the State of Illinois, with its principal place of business in Freeport, Illinois. That said Furst-McNess Company has failed to file with the Secretary of State for the State of Arkansas a copy of its charter, and has failed to file a statement of its assets and liabilities, and has failed to designate its general office in the State of Arkansas, as is required by § 1826 of C. & M. Digest. That said Furst-McNess Company has failed to file the resolution of its board of directors and has failed to designate an agent for service in this State, as is required by § 1827 of C. & M. Digest. That said Furst-McNess Company has wholly failed to comply with the laws of the State of Arkansas permitting foreign corporations to do business in Arkansas, and was not and is not authorized to do business in Arkansas.

"That Frank E. Furst, one of the plaintiffs herein, was, at all times herein mentioned, and is now, the president of Furst-McNess Company and a large stockholder therein; that Fred G. Thomas, one of the plaintiffs herein, was, at all times herein mentioned and now is, vice president of Furst-McNess Company and a large stockholder therein. That the firm of Furst & Thomas was organized at the same time Furst-McNess Company was founded, and was organized for the sole purpose of distributing the products manufactured by Furst-McNess Company. That Furst & Thomas are the agents of Furst-McNess Company, and, in making the contract with this defendant and in delivering the goods to this defendant, acted for and on behalf of said Furst-McNess Company, and the contract when made was, in truth and in fact, a contract between this defendant and said Furst-McNess

Company, and that this defendant, in the handling and selling of the products delivered by Furst & Thomas, was acting as the agent of said Furst-McNess Company. That all sales of the goods so delivered to him as aforesaid were had and made by this defendant in the State of Arkansas, as the agent of Furst-McNess Company in the State of Arkansas, in violation of the statute in such cases made and provided.

"Defendant denies that he is indebted to plaintiffs in the sum of $1,376.76, or in any other sum and amount, and, having fully answered, he asks that the complaint as to him be dismissed and that he have judgment for his costs."

The other defendants also filed separate answers, but it is not necessary to set them out. The appellant does not abstract any of the evidence, but sets out the instructions of the court, both those given and refused, and also motion for a new trial and judgment. Appellants do not abstract the testimony, for the reason that it does not ask any reversal of the judgment by any reference to the testimony, but relies solely on the law, and states that, whether or not the contract sued upon is subject to the terms of what we know as the "Wingo act" (Acts 1907, p. 744) relating to nonresident corporations, is determinative of the question to be raised here.

Appellants admit that, if the contract set forth above is a contract of agency by Furst & Thomas or the company manufacturing the products referred to in the contract, then their contention must fail. But they say, on the other hand, if it is a contract of purchase and sale, then it refers to interstate commerce, and appellant would be entitled to recover. That is, they could if it is a contract of purchase and sale, and not ambiguous, then it was the duty of the trial court to instruct for the appellant, without submitting any questions of fact to the jury. It therefore becomes unnecessary to determine or decide any questions except whether the contract sued on is a contract of purchase and sale or a contract of agency, or whether it is so ambiguous as to permit evidence to

determine the effect of the contract, whether it is one of purchase and sale or one of agency.

The first part of the contract, when considered alone, would be construed as a contract of purchase and sale. The question, then, is whether the other parts of the contract render it ambiguous. This court has several times decided the question involving contracts somewhat similar to the one here involved, and it may be conceded that, if the contract is unambiguous, it is the province of the court to construe it and declare its purport.

In the case to which attention is called by appellant, in 115 Ark. 166, 171 S. W. 136, the contract there dealt with provided for the appointment of Clark as a traveling salesman for its products in the territory described, and no other, and agreed to furnish its products at place of shipment to said traveling salesman at such times and in such reasonable quantities as he might order, to be charged to him, in accordance with the company's price list current, etc. The medical company promised to take back all goods left in possession of the traveling salesman at the time he quit work. These are substantially the same provisions as in the contract involved here. In the case mentioned they also had an obligation of sureties, as they have in this case. The court, among other things, stated in the case referred to:

"In construing a contract we may consider the construction which the parties themselves have placed upon it and the action they have taken in executing its provisions. These rules of construction, however, are not available where the terms of the contract are unambiguous. Where the terms of the contract are unambiguous, it is the province of the court to construe the contract and to declare its purport; and appellee insists that that duty here devolved upon the trial court, and that that court correctly construed the contract as one of sale, and not as a mere appointment of an agent. * * * It is clear that, if the contract between the parties constitutes a sale of the commodities there mentioned, there can be no doubt that the court correctly directed a verdict in favor of

appellee. But the evidence upon that question is not so undisputed that it may be said as a matter of law that the contract constituted a sale of goods, and not an agency." *Clark* v. *J. R. Watkins Medical Co.,* 115 Ark. 166, 171 S. W. 136.

The court reversed and remanded the above case, with directions to submit the questions of agency to the jury, with directions to render a verdict for the appellee if they find the relationship between litigants was that of vendor and vendee, rather than that of principal and agent. The court in the above case reviewed the authorities and held that the contract in that case was such as to be a question of fact for the jury as to whether the litigants were vendor and vendee, or whether the contract created an agency.

The contract of J. R. Watkins Medical Company was again before this court, and it was there held that the evidence was legally sufficient to support the finding that the business out of which this litigation arose was appellant's and that appellee was but his agent. *J. R. Watkins Co.* v. *Williams,* 124 Ark. 539, 187 S. W. 653.

In the case of *W. T. Rawleigh Medical Company* v. *Holcomb,* 126 Ark. 597, 191 S. W. 215, the court called attention to the fact that, while there were points of similarity between that case and the J. R. Watkins Medical Company case, it did not find the uncertainty in the relationship of the parties which was developed in the proof in the other case. The agreement in the case of the *Rawleigh Medical Company* v. *Holcomb* is somewhat different from the contract in the present suit. The agreement mentioned the medical company as party of the first part, and Holcomb as party of the second part, and not as salesman, and there was nothing in that contract to indicate that he was a mere salesman, and instead of letting him return the goods, in that case, the company agreed to repurchase, at wholesale prices, the goods that the second party had on hand, if they were in as good salable condition as when originally sold to him, provided that the second party, on repurchase, pay the

company's actual expenses of receiving, inspecting and overlooking all such goods. It is also provided in that contract that that instrument constituted the sole and entire agreement. *W. T. Rawleigh Co.* v. *Holcomb,* 126 Ark. 597, 191 S. W. 215.

The contract in the case now before the court expressly states that it is a contract between Furst & Thomas and Wm. E. Chadick, called the salesman. Then they agreed to give the salesman free advice and suggestions through bulletins, booklets and letters as to the best method of selling to consumers the goods purchased by him under this contract. It states that the salesman agreed to pay, etc.

Another thing about this contract is that he does not agree to pay Furst & Thomas, except according to cash sales and collections. It appears from the contract that he receives and sells them, and, after the goods have been sold, he is then to make payment, and, upon the termination of the contract, the salesman is given the privilege of returning promptly his stock of unsold goods.

We think therefore it was clearly a question of fact for the jury to determine whether the contract was one of agency or one of purchase and sale. There seems to be a very clear distinction between this contract and the contracts the court has held were free from ambiguity. It is such a contract and of such doubtful meaning that the court cannot say as a matter of law that it is not a contract of agency. We think the question is thoroughly settled by the former decisions of this court, and the circuit court did not err in submitting the question to the jury, and, this being the only contention of the appellant here, the judgment is affirmed.