THE W. T. RAWLEIGH CO. v. TRERICE.

1. COMMERCE—INTERSTATE COMMERCE REGULATED BY CONGRESS.
   Regulation of commerce between the States of the Union has been committed to the congress of the United States, and the States are inhibited from levying a direct burden upon such interstate commerce.

2. SAME—WHAT IS INTERSTATE COMMERCE A FEDERAL QUESTION.
   The question of what is interstate commerce is a Federal question, and the Federal decisions thereon are controlling.

3. SAME — INTERSTATE COMMERCE — FOREIGN CORPORATIONS—RIGHT TO SUE—STATUTES.
   In an action by a foreign corporation for the balance due under a contract for the sale of goods, where said goods were delivered on defendant's order outside the State, defendant retailed them on his own account, kept all the profits, paid all the costs and was under no obligation to plaintiff except to pay for them, said business was interstate and plaintiff is not barred from maintaining said

As to when a foreign corporation, which has entered into a contract for local handling of its product, may be considered as doing business within the State, see note in L. R. A. 1916F, 334.

On soliciting trade by foreign corporation as doing business within the State, see notes in 9 L. R. A. (N. S.) 1214; 23 L. R. A. (N. S.) 834; L. R. A. 1916E, 236; 6 B. R. C. 801.

On validity of contracts made by foreign corporations which have not complied with statutory conditions of the right to do business in a State, see notes in 24 L. R. A. 315; 1 L. R. A. (N. S.) 1041.

action by reason of the fact that it has failed to comply with Act No. 310, Pub. Acts 1907 (2 Comp. Laws 1915, §§ 9063-9072), relating to foreign corporations doing business within this State.

4. SAME—INTERSTATE BUSINESS NOT CHANGED TO LOCAL BUSINESS BY CONTRACT.

That defendant was required to give all of his time to the business, to make a detailed weekly report, to sell only in a certain locality to be determined by plaintiff, etc., *held,* not to so change the relations of the parties from vendor and vendee to principal and agent that plaintiff was thereby carrying on business within this State.

5. GUARANTY — CONSIDERATION — MUTUAL UNDERTAKINGS OF PRINCIPALS.

The mutual undertakings of the principal parties to a contract for the sale of goods furnish a sufficient consideration for the promise of the guarantors.

Error to St. Clair; Law (Eugene F.), J.    Submitted June 8, 1923.    (Docket No. 89.)'    Decided October 1, 1923.

Assumpsit by The W. T. Rawleigh Company against Edwin Trerice and others for goods sold and delivered. Judgment for defendants on a directed verdict.    Plaintiff brings error.    Reversed.

*Phillips & Jenks,* for appellant.

*Charles F. Gates* (*Alex. Moore,* of counsel), for appellees.

MCDONALD, J.    This action is brought to recover the balance due upon the sale of merchandise in accordance with the terms of a written contract.    The defendant Trerice is the principal debtor.    Dawson and Sharrard are his sureties.    The plaintiff is a foreign corporation of the State of Illinois.    It has no factory or office in Michigan, and has not complied with the statutes of this State relative to foreign corporations doing business here.    . The first contract

between the parties was made in 1916, and was renewed from year to year until their relations terminated in 1921. The contract in question was a renewal. It reads as follows:

"1921 Renewal Form

"1. This contract, made and entered into at the city of Freeport, State of Illinois, by and between The W. T. Rawleigh Company, an Illinois corporation, hereinafter called the seller, and Edwin Trerice of Capac, in the State of Michigan, hereinafter called the buyer:

"2. Witnesseth: Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereafter determine to sell to the said buyer; the kind and quantity of which is to be optional with the said seller;

"3. The seller agrees to sell and deliver to the buyer f. o. b. Freeport, Illinois, or at its option f. o. b. its branch houses or at any other point agreed upon, such of its products as hereinabove specified and at current wholesale prices, unless prevented by strikes, fires, accidents, or other causes beyond its control; the said buyer to furnish signed orders for such goods.

"4. The buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract, by cash, or by installment payments satisfactory to the seller, subject to the discounts as shown in current discount sheets and subject to paragraph 6 hereof.

"5. The seller will at its option also sell to the buyer, a wagon or a body suitable for auto chassis, for cash, or partly or wholly on time, such as the buyer may choose from the seller's current wagon catalog, circulars, or other descriptions.

"6. It is hereby further agreed that either party may at any time before the expiration of this contract, by written notice, terminate this agreement and when so terminated, the account then due and owing shall become immediately due and payable. If not so terminated, this agreement shall expire by limitation on the 31st day of December, 1921; and if buyer refuses and neglects to renew contract, the full amount due hereunder shall be due and payable promptly.

"7. It is further agreed that if dealings conducted

hereunder are mutually agreeable and satisfactory, that a new contract may be entered into for the succeeding year, but the refusal on the part of the seller to enter into a new agreement shall not in anywise affect the agreement herein on the part of the buyer to pay his account.

"8. Seller agrees to purchase from buyer any products (wagon excepted) he may have on hand, and pay or credit buyer with the wholesale price current when they are received, provided buyer returns them during the life of contract or promptly after termination or expiration of same, and provided freight is fully prepaid to point seller designates said products are to be returned; buyer to pay seller the actual expense of inspecting and overhauling same.

"9. It is mutually understood that the seller will furnish the buyer from time to time with educational salesmanship literature, consisting of Rawleigh's Weekly, Guide Book, and other booklets, bulletins, circulars, leaflets and letters of advice and suggestions for the sole purpose of aiding and assisting buyer in making sales and collections; but it is expressly agreed that nothing contained in any of the aforesaid literature, letters, booklets, leaflets, etc., shall be taken in anywise to alter, modify, change or affect this agreement and shall only be considered as educational and advisory.

"10. And it is further understood and agreed by and between the parties hereto that this contract includes and does and shall constitute the sole, only and entire agreement between the parties hereto, and further that this contract cannot and shall not be changed or modified in any particular whatsoever by any employee or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto.

"11. In witness whereof, the parties hereto have set their hands and seals, the seller in its corporate name by its president thereunto duly authorized, and

its corporate seal hereunto affixed, and the said buyer in his own proper person.

"THE W. T. RAWLEIGH COMPANY,
            "By W. T. RAWLEIGH,
                            "President.
        (Signed) "EDWIN TRERICE.
                (Buyer sign here.)    (Seal.)
    "Accepted Jan. 3, 1921, at Freeport, Illinois. .
    (Seal.)"

Attached to this contract was a guaranty signed by defendants Dawson and Sharrard.    When the contract was terminated there was an admitted balance of $900.12 due to the plaintiff.    The principal defense was that, the plaintiff having failed to comply with the laws of Michigan with respect to foreign corporations doing business in this State, the contract was invalid and plaintiff could not maintain its suit.    At the conclusion of the proofs both parties moved for a directed verdict.    The court granted defendants' motion, giving as his reasons therefor that the plaintiff was precluded from maintaining its suit on the contract because it was a foreign corporation doing business within this State without having complied with the requirements of Act No. 310, Pub. Acts 1907 (2 Comp. Laws 1915, §§ 9063 to 9072).

It is the claim of the plaintiff that the business in which it was engaged with the defendants was nothing more than interstate commerce, and that it was not doing business in this State within the meaning of our statutes.

"The regulation of commerce between the States of the Union has been committed to the congress of the United States.    That the States are inhibited from levying a direct burden upon such interstate commerce has been settled by a long line of decisions and is recognized in the act under consideration."    *Rath Packing Co.* v. *Cold Storage Co.*, 222 Mich. 315.

"The question of what is interstate commerce is a Federal question, and the Federal decisions are con-

trolling; but we are of the opinion that they are not in conflict with our own cases." *Standard Fashion Co. v. Cummings,* 187 Mich. 196 (L. R. A. 1916F, 329, Ann. Cas. 1916E, 413).

The Michigan cases are cited in *Standard Fashion Co. v. Cummings, supra,* and the Federal decisions are reviewed in *Butler Bros. Shoe Co.* v. *United States Rubber Co.,* 84 C. C. A. 167, 156 Fed. 1, and *In re Monongahela Distillery Co.,* 186 Fed. 220.   Our examination of these cases leads us to the conclusion that to constitute the carrying on of business by a foreign corporation within the meaning of our statute, the business must be local, intrastate commerce, and that, therefore, this plaintiff was not doing business in Michigan, in violation of the statute, unless its contract and dealings with the defendant contemplated something further than the sale and importation of its merchandise.   We have examined the contract, the correspondence and other evidence of the course of business employed in the dealings between the parties in this case, and are of the opinion that the business carried on by the plaintiff with defendant Trerice was limited to interstate commerce.

The contract itself is clearly one of bargain and sale; it was made in Illinois; it does not purport to create an agency in Michigan; it describes the parties as buyer and seller; it provides for the sale of goods to the defendant Trerice on his order at the current wholesale prices, delivery f. o. b. Freeport, Illinois. There is nothing in it to indicate that the plaintiff was to have any part in the resale of these goods in Michigan; it retained no title nor rights in them; it had no office or place of business in this State; it paid no commission to Trerice nor any of the expenses incurred by him in his business.   He bought the merchandise at retail on his own account, kept all of the profits, paid all the costs and was under no obligation

to the plaintiff except to pay for the goods he purchased. So, if the language of the contract is to govern, it is clear that the business was interstate commerce. But the defendants contend that the contract was so modified by subsequent correspondence as to change their relations from vendor and vendee to principal and agent. The facts relied upon by the defendants as showing agency are that Trerice was required to give his entire time to the business, to make a detailed weekly report and to sell only in a certain locality to be determined by the plaintiff; that many others were engaged in other localities selling plaintiff's product under similar arrangements; that a man named Dean, claiming to represent the plaintiff, solicited others to make contracts such as defendant had; that he dictated the territory in which they should operate and solicited their assistance in securing new salesmen for which they were to receive compensation from the plaintiff. It is claimed that these men, who occupied the same relation to plaintiff as did the defendant, were not acting on their own account but were agents of the plaintiff and that in this way the plaintiff was carrying on business in the State of Michigan within the meaning of the statute relative to foreign corporations. We are not able to agree with counsel that the facts here stated changed the character of the contract in question.

"One may sell his goods to whom he pleases and prescribe other exactions in regard to the price to be charged, and the manner of reselling without changing the character of the transaction as a sale." *W. T. Rawleigh Medical Co.* v. *Holcomb,* 126 Ark. 597 (191 S. W. 215).

In *Standard Fashion Co.* v. *Cummings, supra,* the plaintiff was a New York corporation; it made a contract with defendant Cummings, a merchant of Paw Paw, Michigan, for the sale of its goods; the contract

purported to be between principal and agent and contained the following restrictions as to a sale of the goods by the defendant:

"Second party also agrees not to assign or transfer this agency, nor to remove it from its original location without the written consent of said first party, not to sell or permit to be sold on the premises of second party, during the term of this contract, any other make of patterns and not to sell Standard Patterns except at label prices.    Second party further agrees to permit first party or its representative to take account of pattern stock whenever it desires, to pay proper attention to the sale of Standard Patterns, to conserve the best interests of the agency at all times, to reorder promptly all patterns as sold, and to give the department a prominent position on the ground floor in the store."

This court there held that notwithstanding these restrictions, and the further fact that the defendant was named as agent in the contract, it was one of absolute sale; that when the goods were delivered to Cummings, they became his property, and the sales were made on his account only, and that under such circumstances the business of the corporation was limited to interstate commerce.  So, too, in the instant case, when the merchandise was delivered to Trerice it became his property; its resale was solely on his own account.  The business conducted in the State of Michigan was his business and not that of the plaintiff.  Counsel for the defendants attach much importance to the operations of Mr. Dean in Michigan, and his relations to the plaintiff.  As to Mr. Dean and his authority, the testimony is not very satisfactory; but, conceding his connection with the business to be all that defendants claim, it would not make the plaintiff amenable to the statute with respect to foreign corporations.  *Coit & Co.* v. *Sutton*, 102 Mich. 324 (25 L. R. A. 819).  Under the undisputed facts in

this case the plaintiff was not engaged in local commerce. The balance due on the contract was admitted. The circuit judge should have directed a verdict for the plaintiff for $900.12.

We have examined counsel's claim that there can be no recovery against defendants Dawson and Sharrard, because as to them there was a total failure of consideration for their contract. Without entering into any extended discussion of the question, it is sufficient to say that the mutual undertakings of the principal parties to the contract furnish a sufficient consideration for the promise of the guarantors.

As the circuit judge erred in directing a verdict for the defendants, the judgment will be reversed and a new trial granted. The plaintiff will have costs.

FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred. WIEST, C. J., concurred in the result.