THOMAS INDUSTRIES, INC. v WELLS

1. CORPORATIONS—FOREIGN CORPORATIONS—APPEAL AND ERROR—
TRANSACTION OF BUSINESS—STATUTES—COURT RULES.

A trial court did not err by refusing to conduct a further eviden-
tiary hearing on the issue of whether a plaintiff foreign corpo-
ration was doing business in Michigan within the meaning of
the Business Corporation Act where the court had before it
ample facts upon which to make a decision and where the
plaintiff was on notice that the defendant planned to pursue
the issue and could have presented whatever facts it possessed
relative to the issue, which facts were not peculiarly within the
defendant's    knowledge    (MCLA    450.2012[1];    MSA
21.200[1012] [1], GCR 1963, 112.1).

2. CORPORATIONS—FOREIGN CORPORATIONS—TRANSACTION OF BUSINESS
—STATUTES.

A foreign corporation transacted business in Michigan within the
purview of a statute which defines those activities considered to
be the transaction of business for purposes of requiring a
foreign corporation to obtain a certificate of authority in Michi-
gan where the corporation pursued a continuous and system-
atic program of fostering intrastate sales including offering a
cooperative advertising program to its Michigan distributors to
promote intrastate sales, employing a resident salesman whose
established territory covered large portions of the state, and
encouraging an identifiable architectural image for its distribu-
tors (MCLA 450.2012[1]; MSA 21.200[1012] [1]).

3. CORPORATIONS—FOREIGN CORPORATIONS—TRANSACTION OF BUSINESS
—TEST.

The test of whether a foreign corporation is doing business in
Michigan for purposes of the Business Corporation Act is
whether the corporation, as evidenced by its overall operations
in the state, displays that continuity of act and purpose expres-
sive of an intent to do business in Michigan.

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 36 Am Jur 2d, Foreign Corporations § 317 *et seq.*
[4, 5] 36 Am Jur 2d, Foreign Corporations §§ 280–294, 298, 299.

4. CORPORATIONS—FOREIGN CORPORATIONS—CERTIFICATION TO TRANS-
    ACT BUSINESS—MAINTENANCE OF ACTION—STATUTES.

A foreign corporation transacting business in Michigan without
having obtained a certificate of authority may not maintain an
action based upon an intrastate business transaction (MCLA
450.2051, 600.2021; MSA 21.200[1051], 27A.2021).

5. CORPORATIONS—FOREIGN CORPORATIONS—CONTRACTS—MAINTE-
    NANCE OF ACTION—STATUTES.

A contract entered into within the State of Michigan by a foreign
corporation which is transacting business in Michigan without
a certificate of authority is valid but the corporation may not
maintain an action on the contract, and a trial court has the
discretion to dismiss with prejudice an action so brought
(MCLA 450.2051, 600.2021; MSA 21.200[1051], 27A.2021).

Appeal from Macomb, Hunter D. Stair, J. Submitted June 20, 1977, at Detroit. (Docket No. 31012.) Decided November 8, 1977. Leave to appeal applied for.

Complaint by Thomas Industries, Inc., against Dale A. Wells, doing business as American Lighting Company, and American Lighting Company, a Michigan corporation, seeking enforcement of a security agreement and payment for goods sold on a promissory note and on open account. Complaint dismissed, with prejudice. Plaintiff appeals. Affirmed.

*Vestevich, Dritsas, McManus, Evans, Payne & Devine, P. C.,* for plaintiff.

*Stewart, O'Reilly, Cornell, Donovan, Lascoe & Rancilio,* for defendants.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

D. C. RILEY, P. J. This is a suit seeking enforcement of a security interest and payment for goods

_____
* Circuit judge sitting on the Court of Appeals by assignment.

sold on a non-interest-bearing promissory note and on open account. Following plaintiff's opening statement, the trial court on defendants' motion dismissed the cause with prejudice because plaintiff Thomas Industries, a foreign corporation manufacturing lighting products, had transacted business in Michigan without a certificate of authority. MCLA 450.2011; MSA 21.200(1011), MCLA 600.2021; MSA 27A.2021.

On appeal, plaintiff initially claims that the paucity of facts garnered below prevented the lower court from properly determining whether Thomas had conducted business in Michigan within the meaning of MCLA 450.2012(1); MSA 21.200(1012)(1). Although we readily admit that the record might have been better developed, we would not fault the lower court for refusing to conduct an additional evidentiary hearing. The facts before the trial court—deposition testimony of three Thomas employees—provided ample grist for judicial decision. Having been apprised well in advance of trial that defendants would assert plaintiff's noncompliance with the domestication statute, Thomas should have been prepared to offer at trial whatever contrary evidence it may have possessed. Since the extent of Thomas's operations in Michigan were not facts "peculiarly within the pleader's [i.e., the defendant's] knowledge", GCR 1963, 112.1, plaintiff cannot invoke the cited court rule to forestall resolution of the remaining appellate issues.

Thomas next argues that it had no obligation to obtain a certificate of authority before commencing suit.

Labeling the transactions at bar as wholly involving interstate commerce, Thomas arrays the following facts: 1) the promissory note recited that

the same was payable at Hopkinsville, Kentucky; 2) the security agreement was "executed pursuant to the Uniform Commercial Code as adopted by the state of Kentucky"; and 3) there was no evidence below that Thomas maintained an office or inventory in Michigan, that Thomas's salesmen had authority to bind it contractually in local acceptance of solicited orders, that Thomas dealt with customers of defendant or of other Michigan retailers, or that Thomas installed its equipment in Michigan.

In response, defendants assemble other facts of record: 1) Thomas engaged in extensive sales in Michigan;[1] 2) it employed a territory manager—a resident of Livonia, Michigan—whose responsibilities included representing Thomas's Residential Lighting Division in northeastern Michigan, a region encompassing not only the "Great Lakes-Metropolitan Detroit area" but also the "upper territory of counties and Upper Peninsula"; 3) it divided Michigan into sales zones and regions; 4) it considered business accounts in Michigan as distributors; 5) it promoted a standard, identifiable concept of storefront and decor image among

---

[1] On this point, the record discloses the following colloquy:

"THE COURT: I believe, when we had a discussion in chambers prior to commencing this morning, you indicated that plaintiff, Thomas Industries, has sales of, what was it? Three quarters of a million?

"MR. EVANS [Plaintiff's attorney]: I made no comment. I think Mr. Donovan [Defendants' attorney] had a figure and I am not in a position to rebut that.

"THE COURT: Well, let me ask this: did it come out in the deposition? I recall some discussion of that and I recall your words, 'No question we do—'

"MR. EVANS: 'A lot of business.'

"THE COURT: '—a lot of business in Michigan.'

"MR. EVANS: Yes. There are a lot of sales to business firms that are retailers of lighting fixtures which businesses are independent retailers and are not divisions or extensions of the seller corporation which is principally located in Kentucky."

Michigan distributors; 6) it engaged in programs of cooperative advertising, inventory exchange and defective-goods replacement[2] with Michigan distributors; 7) it imposed regulations coincident with these programs on Michigan distributors; and 8) it extended credit in Michigan, the promissory note having been executed in Mt. Clemens.

Section 1012(1) of the Michigan Business Corporation Act, as amended,[3] defines by exclusion those activities which will and will not be deemed transacting business:

"SEC. 1012. (1) Without excluding other activities which may not constitute transacting business in this state, a foreign corporation is not considered to be transacting business in this state, for the purposes of this act, solely because it is carrying on in this state any 1 or more of the following activities:

(a) Maintaining or defending an action or suit or an administrative or arbitrative proceeding, or effecting the settlement thereof or the settlement of a claim or dispute.

(b) Holding meetings of its directors or shareholders or carrying on any other activities concerning its internal affairs.

(c) Maintaining a bank account.

(d) Maintaining an office or agency for the transfer, exchange, and registration of its securities, or appointing and maintaining a trustee or depository with relation to its securities.

(e) Effecting sales through an independent contractor.

(f) Soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such

---

[2] Thomas's "local salesman" replaces goods found to be defective. The record, however, does not reveal whether the salesman maintains an inventory in Michigan for replacement of defective goods.

[3] 1973 PA 98 § 1 amended § 1012(1) by adding the word "solely" to avoid the implication that all the activities listed may be carried on without their constituting the transacting of business. See, Michigan Law Revision Commission, 8th Annual Report (1973), p 9.

orders require acceptance without this state before becoming binding contracts.

(g) Borrowing money, with or without security.

(h) Securing or collecting debts or enforcing any right in property securing the same.

(i) Transacting any business in interstate commerce.

(j) Conducting an isolated transaction not in the course of a number of repeated transactions of like nature." MCLA 450.2012(1); MSA 21.200(1012)(1).

While § 1012(1) has no exact counterpart under prior law, it does embody certain settled principles. Where, for example, a foreign corporation transacts any business in interstate commerce, MCLA 450.2012(1)(i); MSA 21.200(1012)(i), or conducts "an isolated transaction not in the course of a number of repeated transactions of like nature", MCLA 450.2012(1)(j); MSA 21.200(1012)(1)(j), it is not doing business in Michigan for purposes of the act. See *Long Manufacturing Co, Inc v Wright-Way Farm Service, Inc,* 391 Mich 82; 214 NW2d 816 (1974).

On the other hand, where the things done are " 'of a character indicative of an intention on the part of the corporation to carry on its business in the state * * * [i.e., evincing] a continuity of act and purpose.' 17 Fletcher Cyclopedia Corporations (1960 rev ed), § 8466, pp 554–555", *Long, supra* at 88–89, then the foreign corporation can be said to have transacted business in Michigan.

With *Long* and its forebears as our guiding light, we affirm the lower court's conclusion that Thomas had transacted business in Michigan within the purview of the present domestication statute. The record discloses not an isolated sale but a continuous and systematic program of fostering intrastate sales. *Long, supra* at 92. Thomas offered a cooperative advertising program to its

Michigan distributors under which each would contribute $1500 semiannually to promote intrastate sales to Michigan tradesmen or residents, *cf. Eli Lilly & Co v Sav-On-Drugs, Inc,* 366 US 276, 281; 81 S Ct 1316, 1319; 6 L Ed 2d 288, 293 (1961), and *Behlen Manufacturing Co v Andries-Butler Inc,* 52 Mich App 317, 320; 217 NW2d 125 (1974); it employed a resident salesman, apparently full time, whose established territory covered large portions of the state, *cf. Long, supra* at 92; and it encouraged an identifiable architectural image for its lighting centers in much the same way as do many national fast food chains.[4]

Although we are mindful that a foreign seller of goods may, without domesticating, prescribe " 'exactions in regard to the price to be charged, and the manner of reselling' ", *The W T Rawleigh Co v Trerice,* 224 Mich 420, 426; 195 NW 79 (1923), quoting *W T Rawleigh Medical Co v Holcomb,* 126 Ark 597; 191 SW 215 (1917), we also recognize that *Trerice,* unlike the present case, did not involve the foreign corporation's payment of "expenses incurred by * * * [the Michigan distributor] in his business". 224 Mich at 425.

We also observe that nowhere in its appellate brief does Thomas expressly deny involvement in intrastate sales; rather it shrouds its claims with qualifications suggesting that defendants have "shown no aspect of *the transaction sued upon* which constitutes the conduct by plaintiff of intrastate business under the case law cited". (Appellant's brief at 22; emphasis in original.) Neither *Long, supra,* nor MCLA 450.2012(1); MSA 21.200(1012)(1) comprehend so circumscribed an

---

[4] At the deposition of one Thomas employee, the deponent agreed that Thomas's concept of an identifiable architectural image (mansard roof with dormers and an outdoor lantern) is based on the same principle as that of the McDonald's hamburger chain.

inquiry. The test, as noted, is whether the corporation, as evidenced by its overall operations in the state, displayed that continuity of act and purpose expressive of an intent to do business in Michigan. Accordingly, we hold that for purposes of the Business Corporation Act Thomas conducted business in Michigan without a certificate of authority. That Thomas also engaged in interstate activity within Michigan does not obviate its duty of compliance with the domestication statute. *Eli Lilly, supra, Behlen, supra.*

Lastly, Thomas maintains that even if it had transacted intrastate business, the lower court should not have dismissed the case with prejudice unless first according plaintiff an opportunity to register in Michigan.

To resolve this question, three statutes must be examined:

"SEC. 1011. A foreign corporation shall not transact business in this state until it has procured a certificate of authority so to do from the administrator. * * * ." MCLA 450.2011; MSA 21.200(1011).

"SEC. 1051. (1) A foreign corporation transacting business in this state without a certificate of authority shall not maintain an action or proceeding in any court of this state, until the corporation has obtained a certificate of authority. An action commenced by a foreign corporation having no certificate of authority shall not be dismissed if a certificate of authority has been obtained before the order of dismissal.

* * *

"(2) Failure of a foreign corporation to obtain a certificate of authority to transact business in this state does not impair the validity of a contract or act of the corporation, and does not prevent the corporation from defending an action or proceeding in a court of this state." MCLA 450.2051; MSA 21.200(1051).

"SEC. 2021. When, by the laws of this state, any act

is forbidden to be done by any corporation, or by any association of individuals, without express authority by law, and such act was done by a foreign corporation, the foreign corporation shall not maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act." MCLA 600.2021; MSA 27A.2021.

In *Lake States Engineering Corp v Lawrence Seaway Corp,* 15 Mich App 637; 167 NW2d 320 (1969), Judge, now Justice, LEVIN, writing for a unanimous panel, interpreted MCLA 450.95; MSA 21.96[5] (since repealed by 1974 PA 140, § 2). Referring to the combined operation of MCLA 450.95; MSA 21.96 and MCLA 600.2021; MSA 27A.2021, Justice LEVIN observed:

"The legislature has deliberately decided to declare a forfeiture in the belief that the *in terrorem* effect of such a forfeiture will tend to compel compliance with the statutory provisions requiring foreign corporations to register and pay taxes comparable to those imposed on domestic corporations. That being the legislative decision our duty is to enforce it even though in a given case the amount of the forfeiture may appear quantitatively or relatively large. *Cf. Dawn Construction Co. v. Paris Home Builders, Inc.* (1960), 360 Mich 281, 285 [103 NW2d 410]; *Bilt-More Homes, Inc. v. French* (1964), 373 Mich 693 [130 NW2d 907].

"Nor does Lake States' compliance with Michigan's requirements after it committed all the acts upon which it declares in its complaint enable Lake States to maintain this action. [MCLA 600.2021; MSA 27A.2021] provides that an action may not be maintained based upon the commission of unlawful acts of the kind described

---

[5] In germane part, MCLA 450.95; MSA 21.96 provided:

"No foreign corporation shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of the laws of this state with respect thereto, and at the time holds an unrevoked certificate to that effect from the Michigan corporation and securities commission."

in that section. Lake States' acts were of that kind. *Lake States' subsequent qualification did not make those unlawful acts lawful.*

\* \* \*

"Allowing anyone who deals with an unqualified foreign corporation to avail itself of the bar to suits by such corporation serves the public as a whole by providing a most effective deterrent to avoidance of State taxation and regulation of foreign corporations." 15 Mich App at 646–647, 655. (Footnotes omitted; emphasis added.)

In response to *Lake States,* Professor Stanley Siegel, Reporter to the Law Revision Commission that initially drafted the Business Corporation Act, has stated:

"Prior Michigan Law (MCLA Sec. 450.95) invalidated contracts of noncomplying foreign corporations. Subsection (2) [of Section 1051] specifically reverses that rule, thereby reversing the decision in *Lake State* [sic] *Engineering Corp. v. Lawrence Seaway Corp.,* 15 Mich. App. 637, 167 N.W. 2d 320 (1969)."

Siegel, *The Michigan Business Corporation Act with Explanations, Practice Checklists and Forms* (Midwest Business Planners, Ann Arbor, 1972), Comment to Section 1051, p 214. See also, Michigan Law Revision Commission, 5th Annual Report (Supp: Business Corporation Act, 1970), p 289:

"MCLA 450.95 invalidates contracts of noncomplying foreign corporations. This remedy is often perverse. It is rejected in (b) [now MCLA 450.2051(2); MSA 21.200(1051)(2)] consistent with most recent revisions."

We agree with Professor Siegel and the Law Revision Commission to the extent these scholars suggest that MCLA 450.2051(2); MSA

21.200(1051)(2) precludes the invalidation of contracts of noncomplying foreign corporations. It is quite another matter, however, to hold that the provision necessarily deprives the lower courts of their traditional discretion to dismiss a suit with prejudice. See *Reed v Burton Abstract & Title Co,* 344 Mich 375, 384–385; 73 NW2d 828 (1955), and *Central Contracting Co, Inc v Goldman,* 48 Mich App 604, 608; 210 NW2d 901 (1973).

To be sure, Thomas's contracts with defendants remain valid; they may be enforced in any state (other than Michigan) where Thomas can invoke jurisdiction over defendants. But by dint of MCLA 450.2051(1); MSA 21.200(1051)(1) and MCLA 600.2021; MSA 27A.2021, an uncertified foreign corporation, transacting Michigan business, may not command enforcement of its intrastate contracts once the lower court unabusively exercises its discretionary authority to dismiss with prejudice.

In our view the enactment of MCLA 450.2051(2); MSA 21.200(1051)(2) does not reverse *Lake States, supra,* in its entirety. Instead, by permitting compliance at any time prior to dismissal, the provision mitigates the harsh, perhaps "perverse", result of voiding the contracts of foreign corporations. Following the adoption of this provision, the *in terrorem* effect of MCLA 600.2021; MSA 27A.2021 remains (albeit in modified form): If a foreign corporation transacts intrastate business in Michigan without a certificate of authority, it does so at the risk that a lower court, exercising its discretion, may properly dismiss the cause with prejudice and thus foreclose suit in Michigan.

We have examined the lower court record with care and discern no abuse of trial-court discretion in its irrevocable dismissal of plaintiff's suit.

Prompted by an unfounded belief that it was exempt from the domestication statute, Thomas never complied with the statute's requirements. Compare *Central Contracting, supra* at 606. The plaintiff took a calculated risk, but lost. Its difficulties are thus of its own making. Others should pay heed.

Affirmed. Costs to defendants.