*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAUDON PROPERTIES, LLC,

        Plaintiff-Appellant,

v

TRAINING AND TREATMENT INNOVATIONS, INC.,

        Defendant-Appellee,

and

BOBBIE WALKER,

        Defendant.

UNPUBLISHED
February 04, 2025
12:28 PM

No. 366856
Oakland Circuit Court
LC No. 2022-193869-CK

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's final order granting a default judgment against defendant, Bobbie Walker, but its claims of error concern the trial court's earlier orders denying plaintiff summary disposition and granting summary disposition in favor of defendant, Training and Treatment Innovations, Inc. (TTI), under MCR 2.116(C)(10). Finding no errors warranting reversal, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is the owner of residential rental properties. TTI is a nonprofit agency that provides, among other things, housing assistance to its clients. In the fall of 2018, plaintiff

contemplated renting property to Walker.[1]  On October 22, 2018, Kevin T. Bogg, a housing program manager with TTI, sent correspondence apparently to plaintiff, but addressed "to whom it may concern."  In this correspondence, Bogg explained that the TTI housing program provided housing assistance and counseling to its participants.  In particular, TTI staff "work[ed] toward establishing entitlements, accessing project based subsidy lists, section 8 lists, rental assistance programs, and other supported service programs based on availability and eligibility."  Bogg further explained in his correspondence what would transpire should plaintiff lease property to one of TTI's clients:

> A case work[er] is responsible to meet with tenant in the property monthly to ensure bills are up to date and the residence is being kept up.

> If approved for property located at 15300 Leslie in Oak Park, Training and Treatment will assist Ms. Walker with paying the rent in full each month directly to the landlord/property management.  TTI's portion is $1,300.00/month, Ms. Walker is responsible for all utilities.  Training and Treatment will assist the [sic] Security Deposit[.]

Plaintiff alleged below and on appeal that, despite the foregoing representations, it continued to have reservations about renting property to Walker.

On October 25, 2018, Bogg sent a second correspondence specifically addressed to plaintiff.  Bogg again explained, in general, the many services provided by TTI for the benefit of its clients.  Regarding Walker's leasing of plaintiff's property, in particular, Bogg stated:

> The Case Worker is responsible to meet with Ms. Walker in the property monthly to ensure bills are up to date and the residence is being kept up, assist with repairs if needed.  Provide Transportation if need [sic] to appointments.

> Additionally, my responsibility []will be to ensure all rental payment [sic] are made on time monthly and remain in direct communication with the Property Manager if a problem arises.

> TTI will be responsible for the monthly rent of $1300.00 beginning November 1, 2018 throughout the duration of the 12 month lease.  All rents will be paid by the 5th of each month.

On October 26, 2018, plaintiff and Walker entered into a residential lease for plaintiff's property located in Oak Park.  The lease agreement included the following language:

---

[1] Walker did not appear or participate in the lower court proceedings.  The court granted plaintiff's motion for a default judgment and thereafter entered judgment in favor of plaintiff in the amount of $56,257.28 plus costs and reasonable attorney fees.  Walker is not a party to this appeal.

TENANT shall use and maintain the premises in accordance with applicable police, sanitary, and other regulations imposed by government authorities. TENANT also shall maintain the premises in neat and orderly manner. TENANT will keep premises, including equipment and fixtures of every kind and nature in good repair during the term of this lease.

* * *

TENANT shall pay for repair of all damage done to the premises and structure of which they are a part, including fire and flood damage, caused by the TENANT, their guests or invitees; they shall reimburse LANDLORD for all permit, inspection, and certification costs it incurs because of their noncompliance with this lease or its applicable laws, and they shall reimburse LANDLORD for all damages resulting from not reporting the need for repair or maintenance in reasonable timely manner. Nothing in this clause shall waive or lessen LANDLORD's obligation to maintain and repair premises under Michigan law, but LANDLORD is not liable for any loss that accrues to TENANTS because of LANDLORD'S action in reasonable fulfilling its obligations hereunder.

The lease further provided that it could "be amended in writing only, signed by all parties," that the lease was the parties' "only agreement," and that "[t]here are no other agreements, including discussions, proposals, negotiations, and representations made prior to the execution of this lease that are part of this lease unless specifically in writing."

Walker remained in the premises for over two years. It is unclear when she vacated the rental property. However, plaintiff alleges that upon Walker's departure, plaintiff discovered extensive damage to the property that required, among other things, environmental remediation, trash removal, and repairs to the floors, walls, windows, basement, kitchen, and HVAC system. Plaintiff alleged that the cost of necessary repairs exceeded $47,000.

## II. PROCEDURAL HISTORY

### A. COMPLAINT

On April 27, 2022, plaintiff filed a complaint, naming TTI and Walker as defendants. Plaintiff alleged that it entered into the lease with Walker after TTI made guarantees regarding its ability to assist Walker with paying her obligations and keeping the rental property "in good shape." Plaintiff's theories of liability against TTI included breach of a guaranty contract (Count I), fraud (Count II), innocent misrepresentation (Count III), civil conspiracy (Count IV), promissory estoppel (Count V), and unjust enrichment (Count VI). On May 20, 2022, TTI answered the complaint, generally denying any liability for the damages to the rental property.

### B. CROSS-MOTIONS FOR SUMMARY DISPOSITION

In December 2022, the parties filed motions for summary disposition. In its motion, plaintiff sought summary disposition pursuant to MCR 2.116(C)(8) and (10). Plaintiff argued that there was no question of fact related to whether a valid contract existed between TTI and plaintiff,

whereby TTI promised to ensure that the rent was paid and that the property was maintained. Plaintiff relied on the two October 2022 letters authored by Bogg. Plaintiff further argued that there was no question of fact related to whether TTI failed to ensure that Walker complied with her obligations under the lease agreement. In the alternative, plaintiff argued that should the court find that there did not exist a binding guaranty contract, then summary disposition in plaintiff's favor was still appropriate under a promissory estoppel theory. Plaintiff asserted that there was no question of fact that: (1) TTI promised to ensure that Walker paid her rent and kept-up the property; (2) plaintiff relied on that representation when it rented to a tenant that it otherwise would not have rented to; and (3) plaintiff relied on TTI's promises to its detriment.[2]

TTI also filed its motion for summary disposition under MCR 2.116(C)(8) and (10). Regarding plaintiff's breach of contract claim, TTI argued that it did not cause any damage to the rental property and that it was not a party to the lease agreement. In addition, TTI alleged that the Bogg letters, as a matter of law, did not constitute guarantees that TTI would be responsible for Walker's obligation to reimburse plaintiff for damages to the property. TTI asserted that general statements regarding the responsibilities of its caseworkers as to program clients were legally insufficient to create a guaranty contract with plaintiff. In addition, TTI argued that any contract between TTI and plaintiff would be void for lack of bargained for consideration. Finally, TTI asserted that the inclusion of an "integration clause" in the lease entered between plaintiff and Walker precluded plaintiff from arguing that there were other agreements in addition to those in the lease agreement.

Regarding plaintiff's promissory estoppel claim, TTI argued that this claim must fail because there was no evidence of a "clear and definite" promise by TTI to guarantee Walker's debt. Further, TTI argued that plaintiff did not allege facts necessary to establish that it reasonably relied on representations made by TTI. And in a related argument, TTI asserted that it was not reasonable for plaintiff to rely on vague statements made in the October 2022 letters.

The parties' responses to their opponents' motions for summary disposition were substantially similar to the arguments each made in their own respective motions. And, of particular note to this appeal, plaintiff argued in a reply brief that TTI made sufficient promises to induce plaintiff to rent the property to Walker. Plaintiff asserted that without these inducements, plaintiff would not have rented the property to Walker. In support of these assertions plaintiff relied on the affidavit of David Einhorn. Plaintiff cited to and attached the affidavit to one of its reply briefs. Plaintiff made similar statements in its response to TTI's motion for summary disposition. In this response, plaintiff did not cite to the Einhorn affidavit to support this factual assertion despite the fact that the affidavit was attached as an exhibit to its responsive brief.

---

[2] In its motion for summary disposition, plaintiff also argued that it was entitled to summary disposition on its claims of fraud, innocent misrepresentation, civil conspiracy, and unjust enrichment. However, on appeal, plaintiff is not contesting the court's dismissal of these claims and is only challenging the trial court's dismissal of it breach of contract and promissory estoppel claims.

## C. HEARING ON THE PARTIES' MOTIONS

On March 22, 2023, the trial court heard the cross-motions for summary disposition. After the parties presented their positions, the trial court granted TTI's motion for summary disposition and dismissed all five counts of plaintiff's complaint. With respect to the dismissal of Count I, the breach of contract claim, the court found that the lack of a clearly expressed intent to assume a debt and the lack of consideration rendered the alleged guaranty contract unenforceable. Regarding plaintiff's promissory estoppel claim, the court similarly found no genuine issues of material fact. Specifically, the court found that the promissory estoppel claim must fail because plaintiff presented no evidence that it relied on any assurances by TTI.

On April 6, 2023, plaintiff moved for reconsideration, arguing that the court erred when it dismissed the promissory estoppel claim based on a lack of evidence that plaintiff relied on TTI's promises when it decided to permit Walker to lease the home. Plaintiff asserted that the court failed to consider Einhorn's affidavit, which was attached as an exhibit to plaintiff's response to defendant's motion for summary disposition. Plaintiff also argued that the court erred in dismissing its claims based on the statute of frauds because the statute did not apply to a claim of promissory estoppel. Alternatively, plaintiff contended that the court erred in dismissing the contract claim because the Bogg letters satisfied the statute of frauds. Plaintiff also requested that the court reconsider its finding that there was no contract formed because of a lack of consideration. Plaintiff simply argued that such a ruling would establish a dangerous precedent. Finally, plaintiff contended that the court failed to employ the well-accepted principle that any ambiguity in a contract is to be construed against the drafter.

On June 7, 2023, the trial court denied plaintiff's motion for reconsideration. This appeal followed.

## III. STANDARDS OF REVIEW

An appellate court reviews de novo a trial court's decision regarding a motion for summary disposition. *Wurtz v Beecher Metro Dist*, 495 Mich 242, 249; 848 NW2d 121 (2014). The trial court granted TTI's motion for summary disposition as to plaintiff's promissory estoppel and breach of contract claims under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. A motion under MCR 2.116(C)(10) may be granted only when there is no genuine issue of material fact. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Johnson*, 502 Mich at 761 (quotation marks, citation, and brackets omitted). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

"The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006). "[W]hether contract language is ambiguous is a question of law." *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). Whether the statute of frauds

-5-

applies is a question of law that this Court reviews de novo. *Kloian*, 273 Mich App at 458. Further, "the decision whether to admit or exclude evidence is reviewed for an abuse of discretion." *Elezovic v Ford Motor Co*, 472 Mich 408, 419; 697 NW2d 851 (2005). Finally, a trial court's decision on a motion for reconsideration is also reviewed for an abuse of discretion. *Tinman v Blue Cross & Blue Shield of Mich*, 264 Mich App 546, 556-557; 692 NW2d 58 (2004). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).

## IV. ANALYSIS

### A. PROMISSORY ESTOPPEL – DAVID EINHORN AFFIDAVIT

In addition to its contract claim, plaintiff presented an alternative claim based on a promissory estoppel theory. The court initially granted summary disposition in TTI's favor on this claim after it concluded that there was no evidence, and therefore no question of fact, regarding whether plaintiff relied on any assurances by TTI when deciding to lease its rental property to Walker. On appeal, plaintiff argues that the court erred in this regard because it failed to consider the affidavit of Einhorn. In this affidavit, Einhorn, an individual "affiliated with plaintiff," stated that as part of his responsibilities, he handled the rental properties, dealt with potential renters, and approved them to lease plaintiff's properties. Einhorn received Walker's rental application and the two letters drafted by Bogg, TTI's housing program manager. Einhorn averred that Walker was only approved to lease the property because of the assurances provided by TTI and that but for these assurances, he would not have approved the rental of the property by Walker. Plaintiff argues that the Einhorn affidavit gave rise to a question of fact with respect to whether plaintiff relied on TTI's assurances when making the decision to lease the premises to Walker. Plaintiff further argues that the court abused its discretion on reconsideration when it found no palpable error because, in the court's estimation, plaintiff had not sufficiently highlighted and brought to the court's attention the existence of the Einhorn affidavit. We conclude that the trial court erred when it failed to consider the affidavit in deciding whether a question of fact existed regarding plaintiff's reliance on TTI's assurances; however, because plaintiff cannot establish a viable claim for promissory estoppel, the error was harmless.

It is clear from this record that the court failed to consider the Einhorn affidavit because it did not sufficiently review the parties' briefs and the exhibits attached thereto. Recall that the parties filed cross-motions for summary disposition, that the motions were heard together, and that the parties each filed multiple briefs incorporating by reference their other briefs. In its motion for summary disposition, plaintiff asserted that it would not have rented the property to Walker but for TTI's "statements and assurances." TTI challenged this assertion in its response to plaintiff's motion for summary disposition. In a reply brief, plaintiff again argued that absent TTI's assurances, it would not have rented the property to Walker. In support of this assertion, it cited to and attached the Einhorn affidavit. Then, at the hearing, plaintiff's counsel specifically referenced the affidavit and its salient points.

In its written opinion denying reconsideration, the court admitted that when it initially ruled on the cross-motions, it was unaware of the Einhorn affidavit. When contemplating reconsideration, the court reviewed plaintiff's response to TTI's motion for summary disposition, realized in retrospect that the affidavit was attached thereto, but then concluded that "[p]laintiff

attached Mr. Einhorn's affidavit to its response but was utterly silent about it, never directing the Court to its attachment or existence." The court then found that no palpable error occurred on account of plaintiff's own oversights.

The record shows that the trial court did not sufficiently review the briefs and exhibits attached thereto before it granted defendant's motion for summary disposition. On reconsideration, the court faulted plaintiff for failing to attach the exhibit to its response to TTI's motion for summary disposition, despite the fact that the affidavit was specifically attached and referenced by plaintiff in the briefing on its motion for summary disposition. Moreover, plaintiff's counsel referenced the affidavit during the hearing on the parties' competing motions for summary disposition. On reconsideration, the court characterized plaintiff's actions as being tantamount to never providing the affidavit in the first place. This, however, was not true considering that the parties filed cross-motions, that the motions were heard concurrently, and that the parties cross-referenced their briefing. Considering the existing record, the court's denial of reconsideration on the grounds stated was an abuse of discretion, exalting form over substance.

Moreover, the trial court's actions contravened the requirements of MCR 2.116(G)(5). This court rule provides that "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties, *must be considered* by the court when the motion is based on subrule (C)(1)-(7) or (10)." (Emphasis added.) The court candidly admitted that it did not consider the Einhorn affidavit when first considering the concurrent motions for summary disposition. Then, on reconsideration, the court again did not consider the affidavit. The court did not comply with the mandates of MCR 2.116(G)(5).

On first blush, it may appear that because the Einhorn affidavit ostensibly gave rise to a question of fact regarding whether plaintiff relied on TTI's alleged assurances, remand would be necessary to permit plaintiff to further litigate its promissory estoppel claim. But, we ultimately conclude that remand is not warranted because the court's failure to properly consider the Einhorn affidavit was harmless error. When considering plaintiff's cause of action and record as a whole, it is clear that plaintiff could not prevail on a promissory estoppel claim.

The harmless error rule, MCR 2.613(A), generally applies in civil proceedings. *In re Miller*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 364195); slip op at 5. MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

"To overcome this rule, a party must show that an error was prejudicial such that a failure to grant relief would be inconsistent with substantial justice, i.e., that it is more likely than not the error affected the case's outcome." *In re Miller*, ___ Mich App at ____; slip op at 5, citing *Barnett*, 478 Mich at 172. In this case, plaintiff cannot overcome the application of the harmless error rule because even if the court had properly considered the affidavit, plaintiff still cannot prevail on a promissory estoppel theory.

The elements of a promissory estoppel claim include: "(1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (quotation marks and citation omitted). The promise giving rise to an actionable claim must be clear and definite. *Bodnar v St John Providence, Inc*, 327 Mich App 203, 227; 933 NW2d 363 (2019). "To determine whether a promise existed, courts must objectively evaluate the circumstances of the transaction, including the parties' words, actions and relationship." *Id*. Moreover, "[t]he doctrine of promissory estoppel must be cautiously applied only where the facts are unquestionable and the wrong to be prevented undoubted." *Id*. (quotation marks and citation omitted).

At various points in this litigation, plaintiff has characterized the alleged promises differently. Plaintiff argued that TTI represented that it would ensure that Walker paid her rent and kept up the property. Plaintiff has also argued that TTI promised to ensure that the tenant complied with all of the obligations under the lease agreement. The fact that plaintiff has characterized the alleged promises in a multitude of ways belies any assertion that the promises were clear and definite. In any event, the only "clear and definite" promises that can arguably be discerned from Bogg's letters were that (1) TTI would make rental payments in the amount of $1,300; (2) that its case worker would meet with Walker monthly to ensure that her bills were up to date and that the residence was being kept up; and (3) to assist with repairs if needed. It is undisputed that TTI made the requisite rental payments. Regarding the obligation that the caseworker would meet with Walker monthly, plaintiff asserted both below and on appeal that this did not occur, however, the record is completely devoid of any evidence related to TTI's actions or inactions. Moreover, it is not a foregone conclusion that because the property was damaged, TTI did not meet with Walker.

Furthermore, nowhere in the correspondence did Bogg or TTI agree to be financially responsible should Walker damage the premises. This conclusion is readily apparent when one considers an alternative scenario. Had a caseworker met with Walker during a given month and discovered the property damaged, there could be no question that the caseworker complied with the alleged promise, yet the property would still have been damaged. And there is nothing in the Bogg letters that would support a finding that TTI would then be responsible for the damage. The Bogg letters do not even contemplate what would follow should the caseworker discover damage to property. TTI agreed to have a caseworker meet with Walker. Bogg's correspondence did not clearly and definitively agree to be financially responsible for the tenant's actions; its letter only offered to provide an "assist."[3]

---

[3] In fact, Bogg's second letter states that TTI would be responsible for insuring that all rental payments were made monthly from "November 1, 2018 throughout the duration of the 12 month lease." But plaintiff alleged that Walker lived in the home for 24 months and that it was unclear when she left. Nevertheless, plaintiff has not identified when the alleged damage occurred, let alone that it occurred within the first twelve months of the lease.

Although the trial court abused its discretion when it failed to consider the Einhorn affidavit when ruling on the cross-motions for summary disposition, any error in this regard was harmless. Because there was no clear and definite promise to be financially responsible for Walker's actions, plaintiff's promissory estoppel claim must fail.

## B. STATUTE OF FRAUDS

Next, plaintiff seems to argue that the trial court erred when it applied the statute of frauds to dismiss both its breach of contract claim and the promissory estoppel claim. Regarding the breach of contract claim, plaintiff appears to argue that the Bogg letters satisfied the requirements of the statute of frauds, i.e., that the guarantee be in writing and signed by the party to be charged. Plaintiff also asserts that the statute of frauds is not applicable to promissory estoppel claims. A review of the record confirms that plaintiff has misconstrued the trial court's ruling.

Contrary to plaintiff's position, the trial court did not rely on a violation of the statute of frauds when granting summary disposition to TTI. The statute of frauds, MCL 566.132, requires certain types of agreements to be in writing before they can be enforced. Specifically, MCL 566.132(1)(b) provides that "[a] special promise to answer for the debt, default, or misdoings of another person," must be in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise. Although plaintiff argues otherwise, the record suggests that the court actually accepted that the Bogg letters were sufficient to satisfy the "in writing" requirement of MCL 566.132(1)(b). During the hearing on the cross-motions, the court stated:

> Furthermore, under the statute of frauds, quote, a promise to answer for the debt, default, or misdoings of another person, end quote, must be in writing; that's MCL 566.132(1)(b). Therefore, any guaranty agreement must be in writing, and therefore nothing outside of these letters can establish the guaranty.

The court appeared to begin with the premise that the Bogg letters fulfilled the requirements of MCL 566.132(1)(b). More importantly, it did not grant summary disposition to TTI on plaintiff's breach of contract claim because there was not a writing or because the writing was insufficient to comply with the statute.

Instead, the court granted summary disposition on the breach of contract claim on two grounds. The court found that there was no bargained for consideration and that, as a matter of law, the writing did not express a clear intent to assume the debt of another. At least with respect to the later finding, the court did not err.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). "In ascertaining the meaning of a contract, [an appellate court] give[s] the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. at 464. When interpreting a contract, it "should be

read as a whole, with meaning given to all of its terms." *Detroit Pub Sch v Conn*, 308 Mich App 234, 252; 863 NW2d 373 (2014).

More specifically, "[c]ontracts of guaranty are to be construed like other contracts, and the intent of the parties as collected from the whole instrument and the subject-matter to which it applies, is to govern." *Comerica Bank v Cohen*, 291 Mich App 40, 46; 805 NW2d 544 (2010) (quotation marks and citation omitted). However, "a guaranty contract—like a surety contract—is a special kind of contract." *Bandit Indus, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001). "[A] court must approach with caution a claim that the parties have formed a guaranty contract." *Id*. at 512. Indeed, "assumption of another's debt is a substantial undertaking, and thus the courts will not assume such an obligation in the absence of a clearly expressed intention to do so." *Id*. " '[T]he rights of sureties are always favored in the law, and persons standing in that relation in this class of obligation will not be held, unless an intention to bind themselves is clearly manifested.' " *Id*. at 513, quoting *Columbus Sewer Pipe Co v Ganser*, 58 Mich 385, 391; 25 NW 377 (1885). "[A] personal guarantee cannot be implied from language that fails to clearly and unambiguously reflect an intention to assume such responsibility." *Bandit Indus Inc*, 463 Mich at 514.

In this case, the trial court correctly ruled, as a matter of law, that the Bogg letters were insufficient to constitute a binding guarantee by TTI. At most, as discussed above, TTI agreed to pay $1,300 in rent and meet with Walker once a month to ensure that she was paying her bills and that the property was being kept up. Although plaintiff, in retrospect, now desires a guarantee by TTI to be financially responsible for Walker's actions, such a desire cannot reasonably be maintained because there has not been an "unambiguous expression" of TTI's intention to accept this responsibility. *Id*. at 513-514.

Although the court also found the alleged guaranty contract was unenforceable due to lack of consideration, it is unnecessary to address this issue because there was no unambiguous expression by TTI to be responsible for Walker's debts and obligations under the lease. However, because plaintiff has specifically challenged the court's finding regarding the lack of consideration, this issue will be more fully addressed below.

Finally, regarding the promissory estoppel claim, plaintiff is correct when it asserts that, in appropriate cases, equitable estoppel may be used to estop a party from asserting the statute of frauds. In *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982), our Supreme Court recognized that the doctrines of "estoppel and promissory estoppel have developed to avoid the arbitrary and unjust results required by an overly mechanistic application of the [statute of frauds]." However, the court did not grant summary disposition to TTI on plaintiff's promissory estoppel claim based on a violation of the statute of frauds. The court found that summary disposition was appropriate as to this equitable claim because it found that there existed no evidence that plaintiff relied on TTI's assurances. Although we concluded that the court erred in this regard, as discussed above, this error was harmless because plaintiff was unable to establish a viable promissory estoppel claim in other respects.

## C. LACK OF CONSIDERATION

The trial court found, among other things, that the alleged guaranty contract was unenforceable because TTI received no consideration for allegedly assuming responsibility for the tenant's debts. Contracts of guaranty must be construed like other contracts and, therefore, must be supported by consideration. *First Nat'l Bank v Redford Chevrolet Co*, 270 Mich 116, 121; 258 NW 221 (1935). "The essence of consideration—whatever form it takes—is that there be a bargained-for exchange between the parties." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13-14; 824 NW2d 202 (2012). Consideration is a bargained-for exchange, with "a benefit on one side, or a detriment suffered, or service done on the other [side]." *Gen Motors Corp v Dep't of Treasury*, 466 Mich 231, 238-239; 644 NW2d 734 (2002) (quotation marks and citation omitted).

There is some merit to plaintiff's assertion that the trial court erred when it found any agreement unenforceable due to lack of consideration. In *W T Rawleigh Co v Trerice*, 224 Mich 420, 428; 195 NW 79 (1923), the Supreme Court held: "Without entering into any extended discussion of the question, it is sufficient to say that the mutual undertakings of the principal parties to the contract furnish a sufficient consideration for the promise of the guarantors." Ostensibly, the consideration that supported the lease agreement between plaintiff and Walker would suffice. However, we conclude that any error in this regard would be harmless in light of the fact that the alleged guaranty contract was unenforceable for other reasons. As discussed above, a contract requires an agreement. In this case, there was no actual agreement by TTI to assume financial responsibility for the tenant's actions. Because there was no agreement, the alleged contract was unenforceable. Accordingly, any error related to the court's findings regarding the lack of consideration is harmless.

## D. AMBIGUITY

Lastly, plaintiff argues that the trial court erred when it failed to apply the well-recognized doctrine that requires any ambiguity in a contract to be construed against the drafter. We decline to address this unpreserved claim of error. Generally, to preserve an issue for appellate review, the issue must have been raised in or decided by the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Plaintiff did not assert that the alleged guaranty contract was ambiguous and must be construed against its drafter until it filed a motion for reconsideration of the order granting summary disposition in favor of TTI. Indeed, plaintiff's position below and on appeal has been that the alleged contract unambiguously provided that TTI was obligated to assume financial responsibility for the tenant's actions. In any event, an issue raised for the first time in a motion for reconsideration is not preserved for appellate review. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). Although this Court has at times reviewed unpreserved claims of error in civil cases for plain error affecting substantial rights, this Court recently held that plain-error review does not apply to unpreserved

issues in civil cases under Supreme Court precedent. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347Mich App 280, 289; 14 NW3d 472 (2023). Rather, plaintiff has waived this issue by failing to timely raise it in the trial court and is not entitled to relief. Accordingly, we decline to review this final issue.

Affirmed.

/s/ Anica Letica
/s/ Kristina Robinson Garrett